## Case No. 17,344.

### The W. E. CHENEY.

[6 Ben. 178.] [1]

District Court, S. D. New York. Oct., 1872.

TUG-BOAT AND TOW—DELAY IN VOYAGE—STORM—BURDEN OF PROOF.

1. On the 6th of November, 1871, a tug-boat took in tow a barge, at Elizabethport, N. J., to tow her to Brooklyn. She reached Port Johnson, in the Kills, that day, and left the barge there, coming on to New York herself that night. The next morning she took a tow

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

back to Elizabethport, and there took in tow other boats, which she brought to Port Johnson. and there picked up the barge and started on with her. In towing the barge across New York Bay, the latter was sunk in consequence of a storm. The tug-boat alleged that she left the barge at Port Johnson because the weather was such that it was unsafe to tow her through, and that the storm by which she was sunk, on the 7th, was an unexpected squall: *Held*, that the tug was bound to have towed the barge from Elizabethport to Brooklyn, without leaving her at Port Johnson, unless there was good reason for doing so.

[Cited in The King Kalakau, 43 Fed. 172.]

2. If it were shown that there was good reason for having left the barge at Port Johnson, the burden of proof was on the tug to show that there was no time, before she did take the barge in tow again, when she could have proceeded with her so as to have avoided the sudden squall.

3. She had not shown this, and was liable for the loss of the barge and her cargo.

[Cited in The E. D. Holton, 55 Fed. 1013.]

In admiralty.

Beebe, Donohue & Cooke, for libellants.

Goodrich & Wheeler, for claimant.

BLATCHFORD, District Judge. These are two libels filed to recover, the first one the value of the barge Col. J. A. Mulligan, and the second one the value of a cargo of coal on board of her. The barge and her cargo were sunk and lost, while in tow of the steam-tug W. E. Cheney, in the harbor of New York, in the vicinity of Robbins' Reef buoy, on the 7th of November, 1871, in the day time. The answers admit the making of an agreement, on the 6th of November, by the tug, to tow the barge, then having the coal on board, from Elizabethport, New Jersey, to Brooklyn. The answer in the first case alleges, that the cargo of the barge, 201 tons, was more than her usual and ordinary cargo. The answer in the second case alleges, that such quantity was more than the barge was able to carry. The barge was taken in tow by the tug. at Elizabethport, on the 6th, and towed as far as Port Johnson, in the Kills, and there left over night, the tug proceeding to New York. and remaining there that night, and going the next morning to Elizabethport. with a tow of empty boats, and thence back to Port Johnson, with loaded boats, and there, on the morning of the 7th, taking in tow the barge and seven other loaded boats, all abreast, four on each side of the tug, the barge being the third boat from the tug. on the starboard side of the tug. On the voyage to New York, the wind was violent and the sea high, and the barge took in water over her bows, so that she sank, with her cargo.

The libels allege, that the leaving of the barge at Port Johnson, on the 6th, was contrary to the duty of the tug; that, when the tug took the eight boats in tow, on the 7th, at Port Johnson, it was well known that the wind, which was from the northwest, would increase in violence, as the day grew older; that the nine vessels abreast presented a broad and uncontrollable front to the action of the increasing violence of the wind and the roughness of the waves, while a smaller front would have been presented if the tow had been made up in tiers; that, as the tow proceeded, the wind rapidly increased, until it was apparent that it would be dangerous, if not impossible, to cross the waters of the bay with safety to the tow; that, instead of stopping in a place of safety, or turning back, when she might, the tug kept on, with the tow, the wind and the waves constantly increasing; that then the tug carelessly, negligently, and unskillfully attempted to turn around with the tow, by attempting to tow towards the wind, thus presenting the broadside of the barge to the full action of the wind and the force and roughness of the waves, when the barge filled and sank, with her cargo; and that the loss was occasioned solely by the neglect and want of care and skill of those navigating the tug, and, among other things. in not remaining by the barge, and taking a proper time to cross the bay. in taking other employment, after she had taken the barge in tow and assumed obligations towards her, in not returning to the barge at an early hour, while the weather was calm, in going to Elizabethport and towing other loaded boats, and thus losing time and increasing the risk, in making up a tow which presented nine vessels abreast, in not making up the tow in tiers, in not stopping and returning when she found the wind increasing, in attempting to turn towards the wind, instead of keeping off before the wind, to a place of safety, and in taking in tow so large and improper a number of loaded vessels.

The answers allege, that the tow was stopped at Port Johnson on the 6th. on account of a severe storm, which rendered it improper to proceed; that the tow of eight boats was not an improper one for the tug and was properly made up; that, when the boats were taken in tow at Port Johnson on the 7th, the weather was fine; that, when the tow arrived outside of Robbins' Reef, a sudden and unexpected squall from a northwesterly direction struck the tow and continued for about twenty-five minutes; that it was impossible to stop the tow in that place and the safest way was to proceed on their course; that, by the squall, and by the perils of the sea, or by reason of the overloading of the barge and her being very deep in the water and old and decayed, she was unseaworthy and unable to resist the dangers of the sea; that the water was washed upon her deck and, because her hatches were open, into the hold; that, thereupon, the master of the tug, seeing the danger to the barge and that she would inevitably sink, put his tug and tow around head to the wind. and not off before the wind. and endeavored to run the tow back into the Kills and beach the barge. but the boat, before she could be beached. sank: that the accident occurred by the perils of the sea. and was inevitable, or else through the fault of the persons loading and managing the barge. in that, among other things, she was too deeply laden, that she was

an old and unseaworthy boat, that her hatches were left open, and that she was insufficiently manned; that the persons in charge of the tug were not guilty of any negligence, unskilfulness or mismanagement, in the time and manner of towing, or making up the tow, or otherwise; and that the accident was occasioned by the perils of the sea, and was inevitable, or else by the negligence, mismanagement and unskilfulness of the agents of the libellants and the persons managing the barge.

Under the contract of towage admitted by the answers—one from Elizabethport to Brooklyn—the tug was bound to proceed on the voyage and take the barge to Brooklyn. without leaving her for a time at Port Johnson, unless there was good reason for doing so. The tug claims to have shown good reason therefor, because of the violence of the wind and sea on the afternoon of the 6th. Assuming good cause to have been shown for leaving the barge at Port Johnson for a time, the disaster having happened, the burden of proof is on the tug to show that there was no time prior to the time when, on the 7th, she resumed the trip with the barge, that she could have taken the barge in tow and transported her safely to Brooklyn from Port Johnson, and thus have avoided the alleged sudden squall set up in the answers. The tug fails to show this and does not allege it in her answers. She does not aver or show that she could not have transported the barge safely during the night of the 6th, or that there was any such violence of winds or waves during that night as would have prevented such safe carriage. On the contrary, the evidence on the part of the libellants establishes that the wind went down with the sun on the 6th and that the night was quiet. On this ground alone condemnation of the tug must follow, even assuming that the weather was fair when the vessels left Port Johnson on the 7th, and that the disaster happened as the result of a sudden squall.

No fault on the part of the barge in overloading, or improper loading, or in manning or equipment, is shown. The tug took her in tow as she was. with a full opportunity to see how she was loaded, manned and equipped.

There must be a decree for the libellant in each case, with costs, and a reference to a commissioner to ascertain the damages.