THE KING KALAKAU.[1]

NEW YORK LIGHTERAGE & TRANSP. CO. *v.* THE PENNSYLVANIA R. CO.

*(District Court, E. D. New York. July 24, 1890.)*

TUG AND TOW—FAULTY LOADING—NEGLIGENCE OF TUG—REMOTE CAUSE.

A tug took in tow libelant's barge, which was loaded with a deck-load of rails, and with burlaps below. The tug left the barge at a stake-boat, where, during the night, she rolled so heavily as to lose her deck-load overboard, and received damage herself. For the loss she sued the tug. *Held,* that the immediate cause of the loss was the top-heavy condition of the barge, and the act of the tug in leaving the barge at the stake-boat was but a remote cause of the damage, and did not render the tug liable.

In Admiralty. Action for alleged breach of towing contract.

*Carpenter & Mosher,* for the libelants.

*Robinson, Bright, Biddle & Ward,* for the claimants.

BENEDICT, J. On or about April 1, 1887, the Pennsylvania Railroad Company contracted with the libelant to tow the barge King Kalakau, loaded with old rails and burlaps, from Brooklyn to a dock at South Amboy, N. J. That barge, in tow of the tug Amboy, started from Brooklyn, and about 3 o'clock P. M. of the same day reached South Amboy. On arriving at South Amboy the barge was placed at the stake-boat there. The wind was high at the time, and a snow-storm prevailing. About 12 o'clock that night the respondent's tug went to the barge, still lying at the stake-boat, for the purpose of taking the barge into the dock, but all on board the barge were asleep; and, getting no response to various hails, the tug departed without the barge. At about 1 o'clock the barge rolled heavily enough to dump her deck-load of rails overboard, the boat herself receiving some damage thereby. These losses the libelant seeks to recover of the Pennsylvania Railroad Company. The argument in behalf of the libelant is that it was a breach of the towing contract to leave the barge at the stake-boat, and that this breach of the contract was the immediate cause of the subsequent loss of the iron. Reference is made to the following cases: *The W. E. Cheney,* 6 Ben. 178; *Cokeley* v. *The Snap,* 24 Fed. Rep. 504; *Phillips* v. *The Sarah,* 38 Fed. Rep. 252; *The Bordentown,* 40 Fed. Rep. 682.

Passing the question whether it was a breach of the contract to leave the barge at the stake-boat, and passing, also, the question whether the barge was not at her own risk while lying at the stake-boat subsequent to the time when the respondent's tug went to her, to tow her to the dock, and failed because unable to rouse from sleep those in charge of the barge, I am of the opinion that the immediate cause of the loss was the top-heavy condition of the barge, loaded as she was, with rails on deck, and burlaps below. It is evident that the accident was wholly

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

unexpected by any one. No one doubted the ability of the barge to lie in safety at the stake-boat, and it is plain that she would have encountered no loss if loaded in a different manner. It was, therefore, without contemplation of either party that leaving the barge at the stake-boat would put her in danger of losing her deck load. The act of the respondents in leaving the barge at the stake-boat—a remote cause, perhaps—was not the immediate cause of the loss that ensued, and did not render the respondent liable for the loss. For this conclusion the decision of the supreme court of the United States in *Railroad Co.* v. *Reeves*, 10 Wall. 176, is authority. The libel must be dismissed, with costs.