THE E. D. HOLTON, THE ALICE M. CAMPBELL, and THE ANNIE O. HANSEN.

BANKS v. THE E. D. HOLTON AND THE ALICE M. CAMPBELL.

PENFOLD v. THE E. D. HOLTON AND THE ANNIE O. HANSEN.

(District Court, W. D. Michigan, S. D. May 2, 1893.)

1. TUGS AND TOWS—RIVAL TUGS—NEGLIGENCE—LIABILITY.

A schooner, coming into harbor, signaled for a tug. Rival tugs, the H. and the C., started on a race to secure the job. There was some wind, and the sea was rough, but navigation was not perilous or difficult. The services of the H. were accepted, and she made three unsuccessful attempts to throw her heaving line to the schooner, occupying 20 minutes, during which the schooner was drifting on a lee shore. To prevent grounding, the schooner's captain ordered the H. off, and called on the C. The C. responded, but the H. backed up in her way, obliging her to stop and reverse to avoid collision. The C. again tried to approach, when the H. a second time backed into her course. At the third attempt the C. got the towing line aboard, the schooner secured it to her bow, and attempted to back out. Meantime the schooner had grounded. The tow line was about 100 feet in length, too short for the C. to turn about with. In backing, the C., on reaching the end of the tow line, was brought up suddenly, and was thrown to port and grounded by the motion of her screw. Both the schooner and the C. sustained damage. *Held*, that the C. was not at fault, and that the libel of the schooner against her must be dismissed.

2. SAME—TOWLINE—NEGLIGENCE—DEGREE OF CARE IN PRESENCE OF PERIL.

The schooner had two towlines. The longer one was used only in stormy weather, when the strain was severe, and at other times was stowed below. The shorter line was the one usually used in taking her into harbor. It also appeared that, if the H. had not obstructed the C., the latter would have swung around, quartering to the schooner's bow, and thence out into safe water, thus presenting her stern for the towline, which would then have been long enough. On a libel by the owner of the C. against the schooner, it was claimed that the damage to the C. was caused by the use of the short line. *Held*, that the libel must be dismissed, the master of the schooner having no reason to suppose that the long line would be required, and parties in peril not being held to so strict a rule of conduct as when in a situation for calculation and forethought.

3. SAME—WANTONLY OBSTRUCTING RIVAL TUG—LIABILITY.

The C. was justified in continuing her attempts to reach the schooner, notwithstanding the obstruction of the H., and the proximate cause of the damage to the C. was the wanton conduct of the H., and not voluntarily going into a perilous situation. The H. was therefore liable for the damage sustained by the C.

In Admiralty. Libel by Albert E. Banks, owner of the schooner Annie O. Hansen, against the steam tugs E. D. Holton and Alice M. Campbell. The claim of the libelant against the E. D. Holton was settled out of court before hearing. Cross libel by Jonathan Penfold, owner of the tug Alice M. Campbell, against the Hansen, and the Holton. Libel dismissed. Cross libel dismissed as to the schooner, and sustained as to the Holton.

Markham & Kerwin and D. G. F. Warner, for libelant.

Phillips & Jenks, for the E. D. Holton.

Smurthwaite & Higgins, for the Alice M. Campbell and Jonathan Penfold.

SEVERENS, District Judge. In the early morning of May 15, 1891, the schooner Annie O. Hansen was coming into the harbor of Frankfort, on the eastern shore of Lake Michigan, and signaled for a tug to come out and take her in. The two tugs which are respondents in the original suit were rivals in the towing business at that port, and were lying in the harbor. Hearing the signal, both tugs started on a race to secure the job. There was some wind blowing landward, and the sea was somewhat rough, but there was not enough wind or sea to make navigation perilous or difficult. The Holton, coming up, went to the Hansen, and tendered her services, which were accepted. She made three unsuccessful attempts to throw her heaving line to the Hansen. Why these attempts were not successful does not satisfactorily appear, and the only reasonable inference is that they were not conducted with any reasonable degree of skill. It would seem probable that it was in part due to her eager haste to secure the job, and the want of deliberation in coming up to the Hansen. Some 20 minutes were occupied in this fruitless endeavor, and meanwhile the Hansen was drifting over by the effect of the wind and slackened speed to the leeward shore. All this time the Campbell had been hovering near, watching events. Upon the failure of the Holton to get him in tow, and his own ship being in imminent danger of going ashore, the captain of the Hansen ordered the Holton off, and called on the Campbell to come and take him. The Campbell, responding, went to his relief, but, as that tug was approaching, the Holton backed up in the way, and the Campbell was obliged to reverse and stop to prevent collision. Changing her course, the Campbell again tried to approach, when the Holton, again warned to get out of the way by the captain of the Hansen, a second time backed into the course of the Campbell, and the latter was compelled, as before, to stop. On a third attempt the Campbell squeezed by the Holton, and, throwing out her heaving line, got the line of the Hansen, and, securing it to her bow, attempted to back out. Meantime the Hansen had grounded in shoal water to the leeward of the channel. The Campbell was of deeper draught than the Hansen, and her maneuvering in that locality was somewhat dangerous. The line which was given out to her by the Hansen was about 100 feet in length, and was too short for her to turn about with. Accordingly she was prevented from attaching the line to her stern and going ahead. In attempting to back out, the Campbell, on reaching the end of the line given her, was brought up suddenly, and, by the motion of her screw, was thrown to port and grounded. Both the Hansen and the Campbell suffered serious damage before they could be rescued. There is some conflict in the testimony upon some points, but I am satisfied the foregoing statement represents the facts substantially as they occurred.

The owner of the Hansen libels both the tugs, and the owner of the Campbell files a cross libel against the Hansen and the Holton. The court is informed by the proctors that the libelant in the original suit and the Holton have settled the matter of the

liability of the Holton between themselves. The particulars of this settlement are not known to me. The questions submitted by the proctors are such as concern—First, the liability of the Campbell to the Hansen, and vice versa; and, second, the liability of the Holton to the Campbell.

First, in regard to the liability of the Campbell to the Hansen. I see nothing in the facts which would warrant the conclusion that the Campbell was in fault, and the original libel should be dismissed as to that vessel.

Then as to the cross libel by the Campbell against the Hansen. The only reason for attributing any fault to the Hansen is one which is said to grow out of the fact that the line she gave to the Campbell was too short, whereby the latter was thrown about into the shoal water. It is shown that the Hansen had two lines, one of which was newer and much longer than the other, and it is claimed that it was negligence to use the shorter one, as was done. The long new line was used only in stormy weather, when the strain was severe. At other times it was not on deck, but down below. But the one used on this occasion was the one which had for some time been used in towing the vessel into this port, and by these same tugs. It does not appear that any inconvenience had been found in its use. Regard should also be had to the fact, which appears from the testimony, that, when the Campbell was invited to come in, she was in such a position that, if she had not been obstructed by the Holton, she would have swung around, quartering to the Hansen's bow, and thence out into safe water, thus presenting her stern to the latter for the towline, in which case the captain of the Campbell admits that the line would have been long enough. Instead of this, the Campbell was crowded further towards the bow of the Hansen by the maneuvers of the Holton, and, when at length she succeeded in getting to the Hansen, she approached her stem on. This must have been wholly unexpected by those managing the Hansen, who had good reason for supposing that the Holton would behave according to her duty, and stand out of the way. The Hansen was not responsible for the wanton and lawless conduct of the Holton, and cannot be charged with fault for not doing what she might or should have done if the situation had not been caused by such interference. Further than this, it was a moment of peril, and the long line was not on deck. Parties acting in extremis are not held to so strict a rule of conduct as when in a situation for cool calculation and forethought. This rule is of most frequent application where a sudden emergency has been caused by the act of the complaining party; but it seems also to be a reasonable one for a case where, without his fault, a party is momentarily confused in a condition of peril, from whatever cause arising, and when the other party understands the situation. My conclusion must be that the cross libel against the Hansen should also be dismissed.

But, secondly, there remains the question of the liability of the Holton to the Campbell. It is quite clear that the conduct of the former was actuated by selfishness and jealousy, passing all rea-

sonable or lawful bounds. The Hansen was perfectly justified in rejecting her further assistance, after the puerile demonstration she had made, and in view of the Hansen's increasing danger. When the captain of the latter requested the Holton to get out of the way, it was her plain duty to comply. Instead of doing this, she remained and obstructed the Campbell in that vessel's endeavor to do what she had failed to do. The consequence was that the peril of both the Hansen and the Campbell was increased, and, in my opinion, the disaster to both occasioned. The only question on this branch of the case involved in any doubt is the one of law whether the conduct of the Holton was the proximate cause of the injury suffered by the Campbell; but, taking all the circumstances into view, I think it was. Upon the request of the Hansen for the Campbell's assistance, and the assent of the latter to undertake it, a contract relation was established, and a duty was cast upon the Campbell. The execution of that duty was rendered more hazardous by the course taken by the Holton. The increase of the danger, and the consequences liable to result therefrom, must, or should have been, foreseen and appreciated by the Holton. The question then is whether one who wantonly increases the peril of another, while the latter is in the performance of a duty such as this was, is responsible for an injury produced thereby, and which might reasonably have been anticipated. I think he is, and that the damages are proximate. The case of McAfee v. Crofford, 13 How. 447, seems to illustrate the proposition that a somewhat liberal rule should be applied in favor of a party injured by a willful trespass, in tracing the cause to the consequences. And in cases of mere negligence, decided in the admiralty courts, it has been held that if, by the wrongful act of the respondent, the peril of the vessel of the libelant has been increased, and injury has happened, which probably would not have happened but for the wrongful act, the damages are recoverable. The W. E. Cheney, 6 Ben. 178; The Bordentown, 40 Fed. Rep. 682. It would doubtless be otherwise if the danger became so great that it was mere foolhardiness to proceed. But that was not the case here. It was a somewhat hazardous undertaking on the part of the Campbell, after being so long foiled; but she took the risk, and I think, under the circumstances, it was not unreasonable that she should do so. It proved unfortunate for her, but that is not the test of reasonableness. The rule is unquestionably that a party may not go on recklessly into a danger created by the unlawful act of another, and hold him liable for the consequences which follow. In such case it would be his duty to forbear, and he could then hold the wrongdoer for the injury thus far caused. A party cannot wantonly aggravate the consequences of the wrong. Clayards v. Dethick, 12 Q. B. 446.

In such circumstances a question often arises something akin to that in cases of alleged contributory negligence, and the inquiry must be whether, notwithstanding what the defendant is found to have done, the plaintiff's own conduct was free from fault.

FEDERAL REPORTER, vol. 55.

This is a question of fact, and depends upon the circumstances of the case. If, looking at these, it is fairly to be concluded that the plaintiff was not blameworthy in going on in the increased danger, he is to be justified in doing so, and the defendant will be held responsible for all the consequences following naturally from his own unlawful act. In Town of Albion v. Hetrick, 90 Ind. 545, the town had negligently permitted a highway to remain out of repair. A person having the right to travel there, though he knew that the defect existed, yet as there was no other convenient way, and he reasonably thought he could get through, notwithstanding the defect, was held not to be precluded from his right to recover for an injury sustained by the defect of which he had knowledge. In Wilder v. Railroad Co., 65 Me. 332, the plaintiff sued the railroad company for the value of a horse which had been killed on its track. The horse had been turned into the plaintiff's field adjoining the track, which, in disregard of the law, the company had not fenced. It was urged in defense that he was the author of his own wrong, because he knew that the road was not fenced, and took the risk. It was held, however, that he was entitled to the enjoyment of his own rights, and was not necessarily negligent in turning his horse into the field; and he recovered. In Linnehan v. Sampson, 126 Mass. 506, the defendant negligently permitted a dangerous bull to be taken along the street. The man leading him was thrown down, and was being gored by the animal, when the plaintiff, coming by, went to see what he could do. He did nothing for the man, but was himself attacked by the bull and injured. The defense was that the plaintiff saw the danger, and might have kept away from it. Upon the ground that he was not in fault in yielding to a call of duty and humanity, in a sudden emergency, it was held that he was not debarred from recovery because he had notice of the danger into which he went.

The result is that the Holton must be held chargeable upon the cross libel for the damages sustained by the Campbell, and it is so adjudged. A reference will be made to a commissioner to take proofs of the damages sustained by the Campbell, and to report the same, with his conclusions thereon, to the court.