## ATCHISON, TOPEKA, AND SANTA FE RAILWAY COMPANY v. CALHOUN.

### ERROR TO AND APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF OKLAHOMA.

No. 71. Argued January 12, 13, 1909.—Decided February 23, 1909.

Although defendant may have been originally in fault, an entirely independent and unrelated cause subsequently intervening, and of itself sufficient to have caused the mischief, may properly be regarded as the proximate cause of plaintiff's injuries. *Insurance Co.* v. *Tweed*, 7 Wall. 44.

An unsuccessful attempt to replace a child on a railroad car *held*, in this case, to be the proximate cause of injury to the child notwithstanding such attempt was made as the result of the child's mother having been prevented from getting off the car by the negligence of the railway employés.

Failure to foresee and provide against extraordinary and unreasonable risks taken by other persons cannot be regarded as negligence, and so *held* that a railroad company was not liable for negligence to one who, in a reckless effort to run after and board a rapidly moving train, stumbled on a truck which had been left by an employé at a place where ordinarily no passengers got on or off the cars.

18 Oklahoma, 75, reversed.

THE facts are stated in the opinion.

1

*Mr. Robert Dunlap*, with whom *Mr. Henry E. Asp, Mr. Charles H. Woods* and *Mr. George M. Green* were on the brief, for plaintiff in error:

For the plaintiff to recover, the negligence of the railway company must have been the direct and proximate cause of the injury. A proximate cause in the law of negligence is such a cause as operates to produce particular consequences without the intervention of an independent, unforeseen cause, without which the injury would not have occurred.

If subsequent to the original wrongful or negligent act, a new cause has intervened of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote. 1 Thompson on Negligence, § 55; *Galveston &c. Ry. Co.* v. *Chambers*, 11 S. W. Rep. 279; *Glassey* v. *Worcester Consolidated Street Ry. Co.*, 70 N. E. Rep. 199; *Herr et ux.* v. *City of Lebanon*, 24 Atl. Rep. 207; *Shaeffer* v. *Township of Jackson*, 24 Atl. Rep. 629; *Texas & P. Ry. Co.* v. *Beckwith*, 32 S. W. Rep. 347; *Cleghorn* v. *Thompson*, 64 Pac. Rep. 605; *Mo. Pac. Ry. Co.* v. *Columbia*, 69 Pac. Rep. 338; *Frassi* v. *McDonald*, 55 Pac. Rep. 139; *Lewis* v. *Flint & P. M. Ry. Co.*, 19 N. W. Rep. 744; *Claypool* v. *Wigmore*, 71 N. E. Rep. 509; *B. & O. R. R. Co.* v. *Trainor*, 33 Maryland, 542; *Hoag & Alger* v. *L. S. & M. S. R. Co.*, 85 Pa. St. 293; *Cuff* v. *N. & N. Y. R. Co.*, 35 N. J. L. 18; *N. Y., C. & St. L. Ry. Co.* v. *Perriguey*, 138 Indiana, 414; *Alexander* v. *Newcastle*, 115 Indiana, 51; *McGahan* v. *Indianapolis Natural Gas Co.*, 37 N. E. Rep. 601.

*Mr. Selwyn Douglas* and *Mr. Henry H. Howard*, for defendant in error, submitted:

A railroad company must give a passenger a reasonable time to alight at the end of his journey. *Railroad Co.* v. *Mullen*, 75 N. E. Rep. 474; *S. C.*, 217 Illinois, 203. It is pleaded, established by the evidence and found by the jury that the plaintiff in error was negligent in this respect.

It is the duty of a railroad company to furnish passengers a safe place to alight. *Harris* v. *Railway Co.*, 70 N. E. Rep. 407.

This duty is one of law, and does not necessarily depend upon the rules of the company, but upon the circumstances, and the character and extent of the business done at the place. *Railway Co.* v. *Hyde,* 101 Fed. Rep. 401; ·*Railway Co.* v. *Marshall,* 81 Pac. Rep. 169.

The injury occurred in a city of the first class under the laws of Oklahoma; plaintiff in error recognized the necessity for lighting the premises, and had lights there for the purpose, which were not on this occasion burning. The dark and dangerous character of the premises is pleaded, established by the evidence and found by the jury.

The relation of carrier and passenger does not terminate when he alights upon the platform, but continues until he has had a reasonable time, under the circumstances of the case, to leave the station. *Railway Co.* v. *Wood,* 104 Fed. Rep. 663.

Defendant in error did not have a reasonable time within which to leave the premises. The peril of his position would have been increased had he attempted to do so, and an effort on his part could not have been an intelligent one. He was, consequently, as much a passenger as before he left the car, and the same duty was due him. That a child and parent will become separated in the confusion of travel, or through the negligence of the servants of the carrier, is one of the most natural and probable incidents of the business, and not only ought to be but is at all times foreseen. And that when they are separated, particularly under dangerous circumstances, or such as will distress the parent, the first humane person discovering the fact will undertake to bring them together again, is equally natural, probable and easily foreseen.

Cases cited by plaintiff in error can be distinguished from the case at bar.

MR. JUSTICE MOODY delivered the opinion of the court.

The defendant in error, hereafter called the plaintiff, brought an action in a District Court of the Territory of Oklahoma

against the plaintiff in error, hereafter called the defendant, to recover damages suffered by him on account of an injury alleged to have resulted from the negligence of the defendant. He had judgment, which was affirmed by the Supreme Court of the Territory, and the case is now here upon a writ of error directed to that court. The trial was by a jury, and as one question of law before us is whether a verdict for the plaintiff was warranted, the evidence is reported in full. In returning a general verdict for the plaintiff the jury also made special findings in response to 57 questions submitted to it in accordance with the practice permitted in the Territory. The only question of law which it is deemed necessary to determine is, whether all the evidence, with the inferences which might properly be drawn from it, sustained the verdict for the plaintiff, upon the issue submitted to the jury. Instead of setting forth fully the material parts of the evidence it seems better, with the aid of the special findings, to state the facts which it tended to prove. It hardly need be said that wherever there is a fair doubt, that aspect of the evidence most favorable to the plaintiff has been accepted.

Mrs. Calhoun and her son, the plaintiff, a boy a little less than three years of age, were passengers upon a southbound train of the defendant railroad. Their destination was Edmond in the Territory of Oklahoma. The train, somewhat late, arrived at Edmond about 11.30 o'clock in the evening. Mrs. Calhoun had never traveled over the route before, the station was not called out by any of the trainmen, nor was she told by any of them that it was Edmond. In answer to a question she was informed by other passengers that the train had arrived at Edmond, and she hastened to alight, leading the boy with her. When she reached the platform of the car the train had started up again, after, as the jury found, a stop of one minute, and she handed the boy to Mr. Robertson, another passenger on the train, who had left it momentarily, intending to return and resume his journey. Mr. Robertson was then standing upon the station platform. He took the child, handed him to his

son, whom he had met at the station, returned to the steps of the car, and told Mrs. Calhoun not to jump off, as the car was running too rapidly. The station platform was dimly lighted, and no employé of the defendant rendered Mrs. Calhoun or her boy any assistance in leaving the train, nor gave them any warning.

The plaintiff was landed without injury on the station platform and put in the charge of Mr. Robertson's son by his father, who said: "Keep the child and the train will stop and let the lady off." Just then a young man or boy by the name of Carl Jones, supposed by Mr. Robertson's son to be a railroad official, though he was not, took up the child in his arms, ran along by the car, which was moving all the time with increasing rapidity, and attempted, without success, to return the child to its mother, who was standing on the platform of the car. Jones ran 75 to 100 feet to the end of the wooden station platform and then stumbled over a baggage truck, which had been used in unloading the baggage from the train, and had been left at the very end of the platform and partly on it, within a few feet of the rails. When Jones stumbled he lost his hold of the child, who fell under the car and was injured. The train consisted of the engine, followed by a mail car, baggage car, express car, smoking car, day coach, in which the plaintiff had been travelling, chair car, and a sleeper, in the order named. The baggage car, therefore, was some distance ahead of any passenger car, and the truck was used at the baggage car and left at or near the point where it had been used. Mrs. Calhoun started to leave the car at its south end, nearest the baggage car, and there was, therefore, between that point and the north end of the baggage car the length of the express and smoking cars. Jones was not called as a witness by either party. None of the trainmen knew that Jones was attempting to put the plaintiff back on the train until after the injury.

The jury was instructed by the presiding judge that, as the plaintiff had been safely taken from the train and committed to the care of a young man on the station platform, there could

only be a recovery by reason of what happened after that time. But the jury was instructed that the plaintiff might recover if it found that "the company was guilty of negligence in leaving the truck in a dangerous position and in not having the depot platform properly lighted, and that such condition directly and approximately contributed to the injury." There was another ground of recovery submitted to the jury, but it was negatived by the findings and need not be considered further.

It is clear enough, upon this statement of facts, that the railroad did not exercise proper care to afford the plaintiff and his mother a reasonable opportunity to leave the car with safety. The train was late. The attention of the trainmen was fixed upon a quick starting and diverted from the care of the passengers, and the stop at the station was very brief. Taking these circumstances into account with the failure to inform Mrs. Calhoun that she had arrived at her place of destination, there is no difficulty in concluding that the defendant was negligent. If Mrs. Calhoun and her son as they were about to step upon the station platform had been injured by the premature starting of the car, the defendant unquestionably would have been liable. But the injury did not occur in that way. Mrs. Calhoun handed the child to Mr. Robertson to take off the train, and she herself testified that "the child was safely off the train; I saw it in the arms of the gentleman."

The defendant contends that the jury was permitted to find for the plaintiff on account of the negligence which occurred prior to the time he was landed without injury, namely, the failure to announce the station, to assist the passengers, to light the platform adequately at the point of leaving the train, and the delay insufficient to allow passengers to leave the train with safety. The failure in the performance of the clear duty to afford the passengers a safe place and a reasonable time in which to alight, was not, the defendant insists, the proximate cause of the subsequent injury, which was, on the contrary, caused by the foolhardy conduct of Jones in attempting to put back the plaintiff on the train.

Few questions have more frequently come before the courts than that whether a particular mischief was the result of a particular default. It would not be useful to examine the numerous decisions in which this question has received consideration, for no case exactly resembles another, and slight differences of fact may be of great importance. ' The rules of law are reasonably well settled, however difficult they may be of application to the varied affairs of life. In this case undoubtedly the plaintiff's injury was traceable to the original negligence, in the sense that it would not have occurred if the plaintiff had not been separated from his mother. Nevertheless, that negligence may not be the cause of 'the injury, in the meaning which the law attributes to the word "cause " when used in this connection. The law, in its practical administration, in cases of this kind regards only proximate or immediate and not remote causes, and in ascertaining which is proximate and which remote refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause. *Insurance Co.* v. *Tweed,* 7 Wall. 44, 52. This is emphatically true when the intervening cause is the act of some person entirely unrelated to the original actor. Nevertheless, a careless person is liable for all the natural and probable consequences of his misconduct. If the misconduct is of a character which, according to the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse him, and the subsequent mischief will be held to be the result of the original misconduct. This is upon the ground that one is held responsible for all the consequences of his act which are natural and probable, and ought to have been foreseen by a reasonably prudent man. Thus it has been held that if one unlawfully leaves upon a public street a truck loaded with iron which he ought to have foreseen would very likely be disturbed by heed-

less children, he is responsible for an injury which occurs as the result of such disturbance. *Lane* v. *Atlantic Works*, 111 Massachusetts, 136, and see *Lynch* v. *Nurdin*, 1 Q. B. 29; *Railroad Company* v. *Stout*, 17 Wall. 657; *Union Pacific Railway Co.* v. *McDonald*, 152 U. S. 262. Without pursuing the subject further, it may be said that among the many cases in which the subject of proximate cause has been discussed are the following: *Milwaukee &c. Railway Co.* v. *Kellogg*, 94 U. S. 469, 475; *Scheffer* v. *Railroad Company*, 105 U. S. 249; *Cole* v. *German Savings & Loan Soc.*, 124 Fed. Rep. 113; *Stone* v. *Boston & Albany Railroad*, 171 Massachusetts, 536.

It is not necessary for us to consider whether the original neglect of the defendant could properly have been found by the jury to have been the cause of the plaintiff's injury, and we express no opinion upon that question. The defendant's contention that the jury was permitted to find a verdict on that ground cannot be sustained. The charge to the jury makes this clear. The presiding judge said:

"It is admitted that the plaintiff was safely taken from the train in question and committed to the care of a young man on the depot platform, therefore, even though you find that the station at Edmond was not called that fact can only be considered by you for the purpose of explaining the respective positions of mother and child at that time, and if the plaintiff recover it must be by reason of events and conditions subsequent to the time he was taken from the train."

The defendant, it is true, claims that it suffered harm, because the conflicting evidence with regard to the original negligence was submitted to the jury and tended to divert their minds from the real issue. But we think the judge did about as well as he could to make the issue plain to the jury, in view of the fact that he was tied down to written instructions, and thereby prevented from giving the jury the aid that is demanded from the bench for the most successful working of the jury system.

Leaving entirely out of view, then, the original carelessness of

the defendant, we come to the real issue, which was submitted to the jury, upon which alone its verdict can stand. Was the company guilty of negligence in leaving the truck in a dangerous position and not having the depot platform properly lighted, and did that condition directly and proximately cause the injury?

It cannot be doubted that the conduct of Jones was careless in the extreme, though doubtless the motives which impelled him were good. But it is urged that Jones' negligence concurred with the negligence of the defendant in leaving the truck where it did, and that therefore both are responsible for the consequences. There is no doubt that the act of Jones and the act of the defendant with respect to the truck concurred in causing the injury, and we assume that if the defendant failed in its duty by leaving the truck at the end of the wooden platform the verdict can be sustained. *Washington & Georgetown Railroad* v. *Hickey,* 166 U. S. 521. It becomes necessary, therefore, to inquire whether the defendant was negligent in leaving the truck there. But even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. It has been well said that "if men went about to guard themselves against every risk to themselves or others which might by ingenious conjecture be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things." Pollock on Torts, 8th ed., 41.

In judging of the defendant's conduct, attention must be paid to the place where the truck was left. If it had been left where the passengers were at all likely to get off or on the train, and a passenger stumbled over it to his hurt, there could be no doubt of the liability of the railroad. On the other hand, if it

had been left a mile from the station, where by no reasonable hypothesis passengers would attempt to get off or on the train, there could be no doubt that the railroad would not be responsible in such a case. There was a wooden platform by the track at the station 100 feet more or less in length. The truck was left at the very end of this platform, with the greater part off it. The train was at rest, so that no part of it from which passengers might be expected to get off or on was near the truck. It was, of course, dark at the point where the truck was, but no one could foresee that passengers intending to leave or enter the train would be at that point. No amount of human foresight which could reasonably be exacted as a duty could anticipate that a passenger, after the train had started, would run a distance of from 75 to 100 feet with the purpose of boarding a train moving with increasing rapidity, much less that a person would take a helpless infant and while thus running attempt to place it on the train. We are of the opinion that the railroad was not bound to foresee and guard against such extraordinary conduct, and that its failure to do so was not negligence. For these reasons the judgment must be

*Reversed.*