## THE MARINER.

(District Court, S. D. Texas, at Galveston. July 13, 1926.)

No. 1279.

1. **Towage ⬥11(9)—Stranding of tug, which delayed her, held not proximate cause of injury to tow from wind later in voyage.**

Stranding of a tug on a voyage with a tow delayed her for several hours, and later a hard blow came on, which caused injury to several boats in the tow, without fault of the tug. *Held*, that the stranding, though through fault of the tug, could not be considered the proximate cause of the injury, on the theory that, but for the delay, the tow would have been beyond danger from the wind, which was the proximate cause, and that the tug, while liable for injury caused directly by the stranding, was not liable for the later injury.

2. **Towage ⬥11(9)—Delay in voyage, not from deviation held not proximate cause of subsequent injury from storm.**

Delay in the course of a voyage, which does not amount to a deviation, is not the proximate cause of a subsequent injury from a sudden and unexpected storm.

In Admiralty. Suit by John Jacobson against the steam tug Mariner. Decree for libelant for part of claim.

Lockhart, Hughes & Rayzor, of Galveston, Tex., for libelant.

St. John Garwood and Baker, Botts, Parker & Garwood, all of Houston, Tex., for respondent.

HUTCHESON, District Judge. [1] In this case the facts are that the steam tug Mariner, having in tow a dredge, a barge, and a string of pontoons, left Lynchburg on November 20, 1924, bound for Galveston, Tex., at 5:30 in the afternoon; that the tug and tow proceeded safely until they came to a point about three-quarters of a mile from Morgan's Point, when the tug, as one of the witnesses stated, "hauled right off west with his tugboat and ran aground," the bow of the tugboat being about three feet on the land, and the dredge coming onto his stern and driving him further up the bank, so that he could not get off. The dredge stayed afloat and did its best to get the tug off the bank, but to no avail.

About daylight the next morning, the tug Roy Hoover came along and pulled them off, and they started again on their way. As a witness for libelant testified, about 7:30 in the morning, when the tug got under way again, the weather was beautiful, no sign of a norther or other disturbance in evidence, and this was continued until about 11 o'clock, when the wind began to blow, rising in strength to 25 or 30 miles an hour, and struck full across the tow out in the open bay, which it had reached about that time. The pontoons, being light and subject to the full force of the wind, were difficult to handle, and in passing the beacons were caught on them and broken.

I think it clear that the actual injury to the pontoons occurred without any fault on the part of the tug and as an unavoidable accident, and that, while libelant should recover for the damage actually done by the stranding, for which the tug furnished no sufficient or satisfactory explanation, it should not recover for the damage to the pontoons in the bay, unless the theory of libelant that that damage proximately resulted from the original stranding and consequent delay can be sustained.

Respondent insists that the delay cannot be considered the proximate cause of the injury, but that a sufficient intervening cause, the sudden blow of the wind, was the proximate cause of the injury, and is alone, in legal contemplation, responsible for it; that therefore libelant's claim to recovery is unsound. I agree with respondent that the law is as he claims. In 22 Ruling Case Law, in the discussion of proximate cause, the law is stated thus:

"Whenever a new cause intervenes, which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, the second cause is ordinarily regarded as the proximate cause, and the other as the remote cause"—citing Louisiana Mut.

Ins. Co. v. Tweed, 7 Wall. 44, 19 L. Ed. 65; Milwaukee & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256; Atchison, T. & S. F. R. Co. v. Calhoun, 213 U. S. 1, 29 S. Ct. 321, 53 L. Ed. 671; Seale v. Gulf, C. & S. F. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602, and many others.

In Atchison, T. & S. F. R. Co. v. Calhoun, 213 U. S. 1, 29 S. Ct. 321, 53 L. Ed. 671, the Supreme Court of the United States applied the doctrine refusing recovery for injuries to a child, the evidence showing that, though the defendant had been negligent in not furnishing passengers a safe place and a reasonable time in which to alight, the injury occurred because of intervening negligence of a bystander, who attempted to put the child back on the train, which was moving. The court, after saying that the question of proximate cause was a very difficult one, said:

"The law, in its practical administration, in cases of this kind regards only proximate or immediate and not remote causes, and in ascertaining which is proximate and which remote refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause."

In St. Louis, I. M. & S. Ry. Co. v. Commercial Ins. Co., 139 U. S. 223, 11 S. Ct. 554, 35 L. Ed. 154, cotton piled near a railroad track, awaiting transportation, caught fire, it was claimed that, if the railroad had furnished transportation in time, the fire would not have occurred. The court said:

"The delay of the defendant railway company to furnish transportation according to its contract with the compress company was in no legal sense a cause of the destruction of the cotton. It was simply one of a series of antecedent events without which the loss could not have happened, for, if the cotton had not been there, it would not have been burned. The cause of the loss was the fire, kindled by some unknown means, and in no way arising from or connected with the neglect of the defendant to furnish transportation."

. An interesting case in point is Daniels v. Ballantine, 23 Ohio St. 532, 13 Am. Rep. 264, in which a voyage begun was suspended, and later resumed in time to catch a heavy storm. There was no evidence that the weather was peculiarly stormy at that time of the year. It was asserted, since, as was obvious, if the barge had gone through, it would have missed the storm, that the failure to go straight through must be the proximate cause of the injury. The court held that the delay did not constitute a deviation, so as to make the tugboat responsible for all injurious consequences, and that it certainly could not be said that the delay was the proximate cause of the injury, the court saying:

"Nor does it appear, from any fact or circumstance in the case, that there was any reason to apprehend that the perils to be encountered in completing the voyage would be increased by the delay. No fault is imputed to the defendants in resuming the voyage at the time they did, and it does not appear that in anything which subsequently occurred they failed in any respect in the performance of their duty. * * * As the event proved, the storm would not have been encountered if no delay had occurred; but this was a merely fortuitous result. * * * And while it is true, as the event proved, that the storm which caused the loss would not have been encountered if there had been no delay, it is at the same time evident that if the delay had been greater, and the default of the defendants, in that respect, more flagrant than it was, the same favorable result would have followed. The delay cannot, therefore, be regarded as the proximate cause of the loss."

See, also, The Startle (C. C.) 115 F. 555.

Libelant cites the following cases, all of which are easily distinguishable:

Boutin v. Rudd, 82 F. 685, 27 C. C. A. 526, where a vessel, the subject of the contract, was in an exposed and perilous position, and the court said:

"The circumstances demanded immediate and diligent action, not laggard performance nor shuffling effort to evade. * * * That the vessel might be lost through delay was apparent, and was manifestly, we think, a result to be reasonably contemplated from failure of performance of the contract, and one which would ordinarily and naturally flow from such failure to perform. The exposed location of the vessel, the time of year, the customary season of storms, her leaky condition, all demanded promptness in discharge of the duty assumed."

Wilson v. Sibley (D. C.) 36 F. 379, a case in which a raft, which ought to have been carried across Mobile Bay in about 12 hours, took 50 hours. The chief cause of the delay in making the voyage seems to have been the slow progress made by the small tug, instead of the large tug which had been expected and agreed upon. The court said:

"I think, upon the evidence, it is reason-

able to suppose that the injury and loss complained of were occasioned by the collision of the raft with the shore in Bay Minette, its long exposure to the wind and waves in its slow passage in and across Mobile Bay, and by being anchored for so long a time in the open bay, waiting to be towed up the channel to the city of Mobile, which caused the logs to be chafed and worn by the chains with which they were fastened together, and rendered them liable to be broken loose by the ordinary action of the wind and water."

The E. D. Holton (D. C.) 55 F. 1010, a case where liability was founded upon the captain's interference with and obstruction of the rescuing tug, and no question of delay came into the matter at all.

In The Sarah (D. C.) 38 F. 252, the court held that liability was based upon the ground of a deliberate deviation, which, of course, if it occurred, put the responsibility for all future consequences upon the tug.

The West Aleta (United States Shipping Board Emergency Fleet Corporation v. Rosenberg Bros. & Co., C. C. A.) 12 F.(2d) 721, 1926 A. M. C. 855.

The case mainly relied upon by libelants is The W. E. Cheney, Fed. Cas. No. 17,344. There, on account of stormy conditions then existing, as claimed, the tug tied up the tow, and took other contracts, and after some time took hold of the tow again to proceed on her voyage, when a sudden and unexpected squall struck, causing damage without fault on the part of the tug. The court grounded the decision upon deviation, saying:

"Under the contract of towage * * * the tug was bound to proceed on the voyage and take the barge to Brooklyn, without leaving her" as she did voluntarily, "at Port Johnson. * * * The tug claims to have shown good reason therefor, because of the violence of the wind and sea on the afternoon of the 6th. Assuming good cause to have been shown for leaving the barge at Port Johnson for a time, the disaster having happened, the burden of proof is on the tug to show that there was no time prior to the time when, on the 7th, she resumed the trip with the barge, that she could have taken the barge in tow and transported her safely."

[2] If it be considered to be authority for holding that delay in the course of a voyage which does not amount to a deviation shall be held to be the proximate cause of an injury from a sudden and unexpected storm, it does not correctly state the law. It is my opinion, then, and I shall so hold, that the respondent should be made to pay whatever damages flow directly and immediately from the grounding, but none of the damages which flowed from the squall in the bay.

If the parties can settle and present a decree fixing the amount of the damage within ten days, same will be entered. If not, on application to the court by either party, a commissioner will be appointed by the court to assess the damages.