## THE MARINER.

### JACOBSON v. SUDERMAN & YOUNG, Inc.

(Circuit Court of Appeals, Fifth Circuit. January 24, 1927.)

No. 4937.

1. Negligence ⬉61(1)—Negligent conduct, which affords opportunity for intervention of subsequent cause, may impose liability for effect of such cause.

If negligent conduct is of a character which, according to the usual experience of mankind, is calculated to afford an opportunity for the intervention of some subsequent cause, the subsequent injury from that cause may be held the result of such negligence.

2. Towage ⬉11(1)—Negligent stranding of tug, which delayed her, held proximate cause of later injury to tow from storm.

A tug started on a short voyage with a long tow of many boats at a season when storms were to be expected, and good seamanship called for care and expedition. She stranded through her own fault, causing several hours' delay, and later the tow encountered a hard blow, in which some of the boats were injured. But for the delay, the voyage would have been completed before the blow came on. Held, that it was to be reasonably anticipated that prolongation of the voyage would subject the tow to such danger, and the storm was not an independent intervening cause, which prevented the negligence of the tug from being the proximate cause of the injury.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suit in admiralty by John Jacobson against the steam tug Mariner; Suderman & Young, Inc., claimant. From the decree, libelant appeals. Reversed.

For opinion below, see 13 F.(2d) 891.

H. C. Hughes, of Galveston, Tex. (Lockhart, Hughes & Lockhart, of Galveston, Tex., on the brief), for appellant.

Jas. L. Shepherd, of Cisco, Tex., and W. St. John Garwood, of Houston, Tex. (Baker, Botts, Parker & Garwood, James L. Shepherd, Jr., and St. John Garwood, all of Houston, Tex., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The steam tug Mariner, having in tow a dredge, three barges, 18 pairs of pontoons, an anchor barge, and a launch—the tow being between 600 and 700 feet in length—started from Lynchburg, Tex., for Galveston at about 5:30 in the afternoon of November 19, 1924. Between 8 and 9 o'clock that night, after the tug with its tow had passed Morgan's Point, the tug went aground in the bank to the side of the channel, and remained aground there until about 7 o'clock the next morning, when, after being pulled off by another tug, it proceeded on its voyage with the tow. The weather was good when the voyage was started, and when it was resumed after the grounding, there being no sign of a weather disturbance at either of those times, or until about 11 o'clock in the morning of November 20th, when a wind, a norther, began to blow, increasing to 25 or 30 miles an hour.

Such a wind was not an unusual occurrence in that locality in November. The wind drove the pontoons, which were light, against the beacons, and the pontoons were injured. Some slight damage was done at the time of the grounding.

It was conceded that, if the tug had not gone aground, the towage would have been completed in about 10 or 12 hours, and the tug and her tow would have reached Galveston several hours before the norther started. The Mariner having been libeled for the damages sustained by the craft in tow, the court ruled that the grounding was due to negligence chargeable against the tug, that the tug was liable for the slight damage sustained at the time of the grounding, but was not liable for the damage of which the norther was the direct cause, the court being of opinion that the delay could not be considered the proximate cause of the injury to the pontoons, and that the sudden blow of wind or squall was an independent intervening, and the sole proximate, cause of that injury.

[1] There is an irreconcilable conflict in the decisions on the question whether one's negligent delay in performing an undertaking to transport things does or does not render him liable for the results of the consequent increased or more prolonged exposure of those things to the hazards of unfavorable changes in weather conditions. Many conflicting decisions on the subject are referred to in the opinion in the case of Shoe Co. v. Railway Co., 130 Iowa, 123, 106 N. W. 498, 5 L. R. A. (N. S.) 882, 8 Ann. Cas. 45. The proper answer to the question whether negligent conduct is or is not the proximate cause of an injury which follows it largely depends upon the special facts of the case in which the question is presented. Insurance Company v. Tweed, 7 Wall. 44, 19 L. Ed. 65. If the misconduct is of a character which, according to the usual experience of mankind, is calculated to afford an opportunity for the intervention of some subsequent cause, the subsequent mischief may be held to be a result of such misconduct. Atchison, etc., Ry. Co. v. Calhoun, 213 U. S. 1, 29 S. Ct. 321, 53 L. Ed. 671.

[2] The length of the tow and the number and kind of craft composing it made the towage a hazardous one, and called for the exercise by the tower of due diligence and a very high degree of care. The owner of the towed vessels, in offering them for such a towage, assumed the risk of all necessary exposure, but did not consent to their being subjected to hazards which could be avoided by the exercise of reasonable diligence, care and skill on the part of the tower. The W. J. Keyser (C. C. A.) 56 F. 731; Peace River Phosphate Mining Co. v. Mulqueen (C. C. A.) 285 F. 102; The Plymouth (C. C. A.) 186 F. 105.

The effect of the negligently caused delay was to extend the time during which the towed craft were exposed to the hazard resulting from a squall or increased velocity of wind. The towing undertaking necessarily involved exposure to such a hazard during the time reasonably required to complete the towage. Such a wind as was encountered not being an extraordinary event in that locality in November, it was reasonably to be anticipated that it might occur either during the 10 or 12 hours reasonably required to complete the towage or during the additional time the towage actually was in progress. This being so, the hazard of such an occurrence was increased by prolonging the time of exposure to it.

In the ordinary course of nature, such a squall or norther being likely to occur while the towage was in progress, the happening of such an ordinary operation of a force of nature during any part of the time the towage was in progress cannot be regarded as an independent intervening cause. The prolongation of the towage beyond the time reasonably required to complete it being an act which, according to the usual experience of mankind, would expose the tow to the hazard of such an event happening after the expiration of the time reasonably required to complete the towage, the prolongation of the towage was not kept from being a proximate cause of the injury sustained by the fact that the happening of such an ordinary and not improbable event concurred in producing that injury.

One is chargeable with knowledge of the usual effect of ordinary natural conditions or forces upon his negligent act or omission, and is held to have contemplated the appearance and the effect of such conditions and forces upon his negligence. Atchison, etc., Ry. Co. v. Calhoun, supra; Bowen v. Smith-Hall Grocery Co., 141 Ga. 721, 82 S. E. 23, L. R. A. 1915D, 617; Benedict Pineapple Co. v. Atlantic C. L. R. Co., 55 Fla. 514, 46 So. 732, 20 L. R. A. (N. S.) 92; Fox v. Boston & Maine Railroad, 148 Mass. 220, 19 N. E. 222, 1 L. R. A. 702; 22 R. C. L. 140. We conclude that the injury to the pontoons was attributable to the extension of the time during which the tow was exposed to the natural and ordinary hazards of the towage undertaking.

We concur in the court's finding from the evidence that the grounding of the tug and

the consequent delay were negligent. The decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.