**PROEL v. NUGENT et al.**

No. 3332.

Circuit Court of Appeals, First Circuit.

June 10, 1938.

Carl C. Jones, of Concord, N. H. (James B. Godfrey and Demond, Wood-

worth, Sulloway, Piper & Jones, all of Concord, N. H., on the brief), for appellant.

Emory C. Mower, of Burlington, Vt. (Neil Tolman, of Nashua, N. H., and J. H. Macomber, Jr., of Burlington, Vt., on the brief), for appellees.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

These actions of tort for personal injuries (consolidated on appeal) come to this court on appeal from a judgment in the Federal District Court of New Hampshire. Jurisdiction rests on diversity of citizenship and the amounts involved.

The undisputed facts are as follows: The defendant, with a companion, Miss Edda Renouf, on August 14, 1935, in the defendant's automobile, at about 8:30 P. M. (E.S.T.), turned from the main highway in New Hampshire known as U.S. Route 303, into the private way leading to the Mount Washington Hotel, with the intent of going to the Bretton Arms Hotel, which was also located on a private way leading from the Mount Washington Hotel road.

As the defendant approached the turn in the road leading to the Bretton Arms at a point distant therefrom (estimated by the various witnesses) of 100 to 250 feet, but according to the engineer's survey and plan of approximately 200 feet, the defendant saw the plaintiffs approaching on foot on their right hand side of the road and on the defendant's left. Not being familiar with the road to the Bretton Arms, since he had not been in the vicinity for fourteen years, and no other cars being in sight, Proel turned his car to the left hand side of the road and stopped close to the edge of the travelled way,—the hard surface of which at this point was 26-28 feet wide,—to inquire of the plaintiffs the way to the Bretton Arms. One of the plaintiffs said to him: "You are on the wrong side of the road." Both the plaintiffs, however, stepped to the side of the defendant's car, each putting a foot on its running board, and one of them replied to his questions as to the road to Bretton Arms, and as to the location of the Mount Washington Hotel.

Plaintiff Nugent was standing by the windshield facing to the rear, and plaintiff Kiley was farther back and facing toward the front of the Proel car and toward the Mount Washington road. While the men were talking Miss Renouf looked up and said: "There is a car coming." The oncoming car was on the road leading to the Mount Washington Hotel, and when Miss Renouf first saw it it had nearly reached the point where the Bretton Arms road turns off, and by the time the plaintiffs had looked up and realized its approach, it was less than 100 feet from the Proel car and coming directly toward it. It was driven by one Foley, one of the bell boys at the Mount Washington Hotel, who admitted to Miss Renouf that he and his companion were in a hurry to get to some church entertainment nearby. The Foley car was described by some of the witnesses, and stated by the Judge in his charge to the jury, as coming at a fast rate of speed, and estimated by the plaintiffs from 35 to 45 miles per hour, and by the defendant from 50 to 60 miles per hour. It would, therefore, take it less than two seconds from the time it was seen by the plaintiffs and defendant to arrive at the point of location of the Proel car.

The Proel car had its lights on, either dimmed or full, and should have been visible to the driver of the Foley car in time for him to stop his car, or to turn to his left on the hard surface of the road and pass the Proel car in safety. There were also three street lights within a distance of approximately two hundred feet of the parked Proel car.

The plaintiffs, on looking up and seeing the Foley car coming toward them and apparently making no effort to stop or to avoid the Proel car by turning to the left side of the road, where there was sufficient room to pass the Proel car, started to run, as they thought, to a place of safety, on the fairway of the golf links on their right, which are situated on both sides of the road at this point.

Foley, however, instead of stopping his car or passing the Proel car on the left, turned his car to the right and onto the golf links, and ran into the plaintiffs about 25 feet inside the fairway of the links, knocking them down and severely injuring the plaintiff Nugent.

The defendant pleaded contributory negligence on the part of the plaintiffs, and at the close of the testimony filed a motion for a directed verdict, which was denied and exceptions taken. Exceptions were also taken to refusals to give certain instructions requested by the defendant's

counsel on the issue of contributory negligence and to the refusal to give requested instructions on the issue of proximate cause.

If the defendant was negligent in turning to the left hand side of the road and stopping his car to make inquiries of the plaintiffs, not being familiar with the road and the traffic conditions, surely the plaintiffs, who were familiar with the road and traffic conditions at that time of the night and who were cognizant of the fact that the Proel car was on the wrong side of the road, but continued to stand there, were at least equally negligent with the defendant in not watching for cars coming from the direction of the Mount Washington Hotel or the Bretton Arms. Levine v. Shell Eastern Petroleum Products, Inc., 2 Cir., 73 F.2d 292. If they had looked, they could have seen a car coming along the Mount Washington Hotel road for some distance and in time to avoid being hit. They, however, failed to watch for cars coming from that direction and did not realize the Foley car was coming at a fast rate of speed until it was within 60 or 100 feet of them, when they ran out onto the fairway of the golf links, but too late to avoid being hit by it in its unexpected course. If they had remained by the Proel car they would not have been injured.

■■■ Even assuming that it was negligence for the defendant to stop his car on the left hand side of the road to inquire of the plaintiffs his way to the Bretton Arms Hotel, it was not negligence per se, as he had a right to use any part of the road in parking his car, even though it were a public street, in so far as it did not under the ·circumstances constitute negligence at common law. Reed v. Nashua Buick Co., 84 N.H. 156, 157, 147 A. 898. The burden was on the plaintiffs to prove the negligence of the defendant.

There were street lights along the road. The lights on his car were turned on. No one driving along the road toward the Proel car, as Foley was, could have failed, in the exercise of due care, to see the lights on the Proel car, whether dimmed or full, for a distance of more than 300 feet. If the driver of the Foley car was not certain where the Proel car was located on the road, he should have slowed down until he made certain, and either stopped or passed it on his left; but it was clear that the driver of the Foley car did not reduce the speed of his car until too late to avoid

a collision with the Proel car, unless he turned to the right or left. He chose the course which injured the plaintiffs. His attention may have been otherwise engaged, or, in his excitement, when he realized that a collision was imminent, he turned to the right onto the golf course and ran into the plaintiffs, who were running, as they believed, to a place of safety.

■■■ To apply the rule laid down by this court in the case of Texas Gulf Sulphur Co. et al. v. Portland Gas Light Co., 1 Cir., 57 F.2d 801, 804, the plaintiffs must show, to establish the negligence of the defendant as the proximate cause of their injuries, that a reasonable man (the defendant) would have anticipated that the result which followed was a probable result of his act in parking on the left of the road to make inquiries of the plaintiffs, with head lights on and electric lights nearby.

Defendant's counsel requested the following instructions:

"In order to find that Mr. Proel's conduct was the proximate cause of the·accident you must find that the injury to the plaintiffs was the natural and foreseeable result of his conduct."

"If a reasonably prudent man in Mr. Proel's position would not have anticipated that Mr. Foley would operate his car in the manner that he did, then your verdict must be for the defendant," which were refused. Owing to the unusual situation involved in this accident, we think the defendant was entitled to have the issues made plain. Western Union Tel. Co. v. Morris, 8 Cir., 105 F. 49.

■■■ Whether or not Proel was negligent in parking on the left hand side of the road, he could not be said to have anticipated that a driver of a car coming in the opposite direction would not see the lights on his parked car and would not in the exercise of due care slow down or stop, or turn to the left and pass on the left side of the Proel car where there was abundant room.

. The presiding Judge submitted two questions to the jury:

"Q. 1. Was the driver of the Foley car negligent in the manner in which he operated his car in approaching the scene of the accident?

"Answer yes or no.

"If your answer is yes, you will answer question No. 2.

356

"Q. 2. Was such negligence the proximate cause of the plaintiff's injuries?

"Answer yes or no."

From the inquiries by the foreman of the jury for special instructions as to their answers to the questions submitted, it is quite evident that some of the jury were of the opinion that Foley may have been negligent, though not by reason of the speed at which he was driving, but for some reason the jury hesitated to so find, either because they feared that Foley, who was not a party and had not been heard, might alone be held liable for the accident, or because the jury, without understanding or considering the Judge's instructions as to proximate cause, concluded that Proel was negligent for parking on the left side of the road and was therefore responsible for the plaintiffs' injuries. It is clear, we think, that the driver of the Foley car was not in the exercise of due care and that his negligence clearly was the proximate cause of the injuries the plaintiffs received. A directed verdict for the defendant should have been ordered, Atchison, Topeka & Santa Fe Railway Company v. Calhoun, 213 U.S. 1, 10, 29 S.Ct. 321, 53 L.Ed. 671, for the additional reason that the evidence entirely failed to support the allegations in the plaintiffs' declaration as to the manner in which the accident occurred, viz.: that the defendant's car started up and drove across the road, blocking it and forcing Foley to drive onto the fairway of the links.

The evidence of the plaintiffs that Proel started his car just as they started to run is so vague, and at variance with any opportunity for observation by them in their efforts to avoid the Foley car, that it was entitled to no weight with the jury against the positive testimony of the defendant and that of Miss Renouf, who does not appear to have any financial interest in the outcome of the cases, that the defendant did not start his car until after the accident occurred. Foley was not called as a witness. The plaintiffs testified that the Proel car started up as they ran to the side of the road, but owing to their excitement induced by the situation, and their uncertainty and final admission on cross-examination that it might have started up an inch or twelve inches, was insufficient to charge the defendant with being a contributory cause of the accident. Proel testified, after he realized that the Foley car was not slowing down, or attempting to

pass on his left, that there was not sufficient time for him to put his engine in gear, much less to start his car so as to block the road.

The judgments of the District Court are vacated with costs, the verdicts are set aside and new trials ordered.