NÉLIDA ANDINO BLANCO ET AL., Plaintiffs and Appellees, *v.* CENTRAL VICTORIA, INC., Defendant and Appellant.

No. 8120.   Argued June 14, 1940.—Decided July 16, 1940.

*Cayetano Coll Cuchí* for appellant.   *Carlos D. Vázquez* for appellees.

MR. JUSTICE TRAVIESO delivered the opinion of the court.

The widow and children of Manuel Andino Santiago sued the defendant corporation herein in damages for the sum of $10,000, and alleged that the accident which caused the death of their ancestor was due to the negligence and carelessness of the defendant. In the complaint it was alleged that on the day of the accident Andino was traveling from Río Piedras to Carolina in a public automobile; that when the vehicle was going along the highway at moderate speed, "a heifer which was in the possession of the defendant Central Victoria, Inc., and which was at large and without any person being in charge thereof, suddenly emerged in the highway on which the said vehicle was traveling, due to the negligence of the defendant, and placed itself unexpectedly in front of the automobile in which plaintiffs' ancestor was traveling, and the driver of said automobile applied the brakes and swerved to the left in order to avoid a collision with said heifer, which caused the automobile to collide with a tree that stood on the edge of the highway and to be overturned."

After a demurrer for insufficiency had been overruled, the defendant corporation filed an answer specifically denying the essential averments of the complaint, and it alleged that the defendant had not participated in any manner or form in the accident which caused the death of Andino, and that the animal causing the accident did not belong to the defendant corporation.

The case went to trial and the District Court of San Juan rendered judgment sustaining the complaint and adjudging the defendant to pay $3,500 as damages, with costs and $350 as attorney's fees of the plaintiffs. In support of its appeal it urges that the lower court erred:

1. In overruling the demurrer to the complaint.

2. In declaring that the law governing this case is section 1805 of the Civil Code.

3. In declaring that, even if it were conceded that the heifer causing the accident belonged to Isidra Orozco, the defendant was

in possession of the heifer, for the purpose of the civil liability involved.

4. In declaring that the use of the pasture of the defendant by the owner of the heifer does not constitute one of the acts of tolerance to which section 363 of the Civil Code refers.

5. In declaring that the negligence of the defendant was the proximate cause of the accident.

6. In declaring as proved the facts alleged in the complaint.

7. In sustaining the complaint.

In order to formulate and decide the only legal question involved in the seven assignments of error it is necessary to determine first what are the essential facts established by the evidence. The trial court found that the accident had occurred thus:

"At dawn on February 23, 1938, Manuel Andino Santiago, the ancestor of plaintiffs in this suit traveled together with seven other persons in a public automobile which was driven by Elías Cardona; he was traveling on the public road which leads from Río Piedras to Carolina in the direction of the place where he worked, and on reaching a culvert near the Central Victoria, while the car was being driven at a regular speed but not excessive (see paragraph 4th of the answer), a black-colored heifer emerged from the left side of the road, unexpectedly stood in front of the automobile, causing said vehicle to collide with it, and after the car had straightened its course another heifer emerged and the driver of the vehicle then swerved his car which went into the ditch and overturned. Almost all of the persons who traveled in the automobile were injured and Manuel Andino Santiago was killed. Andino was a foreman employed by one of the Federal agencies which perform work in the forest reservation; he earned 50 cents an hour and worked five days a week or 40 hours weekly. Andino was sitting next to the door in the front seat of the vehicle and when the car swerved in order to avoid striking the second heifer that had emerged, it went towards the ditch, collided with a tree, and overturned."

We have examined the evidence and we find that it is amply sufficient to support the conclusions reached by the lower court as to the form and manner in which the accident occurred. The evidence really established the following additional facts:

That the first heifer, with which the automobile collided leaving it wounded in the highway, was the property of Isidra Orozco, a tenant of the Central Victoria, who kept her cattle in a yard *(cercado)* belonging to the central and grazed the same on the pasture of the defendant, with the latter's consent; that after the car had collided with said heifer it straightened its course and continued on its way and further on it encountered the second heifer, marked "C. V.," which belonged to the Central Victoria; that in order to avoid a collision with the second heifer the driver of the automobile was compelled to apply the brakes suddenly, which caused the car to skid and collide with a tree; that after the accident the heifer marked "C. V." was taken by two of the passengers of the automobile to police headquarters, where it was subsequently claimed by the manager of the defendant corporation as belonging to the latter.

The theory of the defendant corporation is that the heifer belonging to Isidra Orozco with which the automobile collided was the proximate cause of the accident in which the plaintiff's ancestor lost his life; and that the defendant can not be held responsible for injuries caused by an animal which does not belong to it but to a tenant of the central to whom the latter, through mere tolerance, had permitted to keep it in the yards and pastures of the corporation.

The trial court, in fixing the responsibility for the damage caused to the plaintiffs, said:

"Another question arising in this case is as to which of the two heifers was responsible for the accident. After an examination of the evidence, I have reached the conclusion that the heifer injured and killed by the automobile as well as the other one which was recovered by the Central Victoria from the police headquarters at Carolina, and the ownership of which was expressly established by the evidence, was responsible for the accident... There is no dispute as to the fact that the defendant was in possession of the heifer even conceding that the latter belonged to Isidra Orozco....; but in this case it is beyond doubt or dispute that both heifers were in the possession of the defendant. It might be argued that what the

Central did was a mere act of tolerance in permitting that a heifer belonging to a person who lived on the land of the Central should graze in the same place in which other animals owned by the Central or by other employees also grazed; but this does not exempt the defendant from responsibility, since by reason of that mere tolerance it was in lawful possession of the heifer and should have taken all precautions to prevent those heifers from going upon the public road and causing such accidents as the one in which the complaint herein originated.''

As may be seen, the lower court reached the conclusion that both heifers, that of the tenant and that of the central, had equally caused the accident and that the defendant was responsible for the damages caused by both animals.

In our judgment, neither the theory of the defendant nor the foregoing reasoning of the trial court are supported by the evidence.

In the automobile at the time of the accident were the driver, Manuel Andino, and seven additional passengers. At the trial the chauffeur Elías Cardona and six other passengers testified, all being eyewitnesses to the accident. Their statements are substantially the same, as will be seen from the excerpts quoted below:

Bonifacio Llano testified as follows:

''At Kilometer 10, on reaching Central Victoria, there emerged suddenly a heifer or steer, I could not determine whether it was a male or female animal, and crossed the highway. The chauffeur tried to defend himself. He passed and hit it, but on straightening its course, further on, immediately, swiftly, another animal emerged and the chauffeur applied the brakes, and he struck a tree and the car stopped. And when it went into the ditch it overturned and struck a mango tree and almost all of us were wounded, and Manuel Andino was killed.''

The passenger José Dick stated:

''We were going from Río Piedras to the encampment and when nearing Central Victoria a heifer suddenly emerged from the right towards the left and although he swerved the car, he always struck it and further on another heifer came out, after he straightened his

course; he had to swerve again and when he applied the brakes he went into the ditch; when the car overturned I became unconscious. I regained consciousness when I came out of the hospital at Carolina.

Upon being subjected to a long and skillful cross-examination, the witness Dick testified thus:

"Q. At the first collision who jumped on the highway?

"A. At the first collision no one jumped out.

"Q. So that when the first collision occurred the door was not open?

"A. No, sir.

"Q. After the first collision occurred, what did the driver do?

"A. He straightened his course.

"Q. In what direction?

"A. Towards his right and when he straightened. . . .

"Q. When he straightened, did the car go on?

"A. Yes, sir.

"Q. About how far?

"A. Twenty feet more or less, when the other emerged.

"Q. And then, did it swerve?

"A. To the left.

"Q. And did it collide with that other heifer, or not?

"A. It did not collide; that is why we swerved and overturned."

The chauffeur Elías Cardona testified as follows:

"At about kilometer 10 there is a slight curve before reaching Central Victoria, and a heifer suddenly came out from the right ditch towards the left and when it came out I tried to defend myself but I always hit it with the right mudguard and when I was about to straighten towards the Central, I came across another animal. When I met the second heifer I had to apply the brakes. I stepped on the brake and then released it and changed gears in order to avoid a collision, and the car, the wheel on this side, I had already hit the bottom of the culvert and overturned.

Camilo de Jesús, a passenger, described the accident thus:

"Before reaching Central Victoria a heifer emerged and then we hit it and immediately another heifer came out and then Elías swerved and fell into the ditch and the car overturned. Mr. Andino was killed and I was injured."

The passenger Carlos Martínez testified as follows:

"That happened because at the time the car was going on its right, a heifer jumped from the right to the left of the highway. I saw it when it hit the car. Then the car zigzagged and when it was almost in the center of the road another heifer crossed from right to left and the chauffeur, in order to avoid hitting it, went into the ditch."

Alejo Otero Luna, another passenger, stated:

"We were traveling in the car of Elías Cardona and near Central Victoria there were two heifers in the ditch on the right-hand side and one of the heifers came out swiftly from the right to the left and the driver made a zigzag towards the left trying to evade the heifer and straightened and then went on and further on there was the other heifer and the car got beyond control and continued to zigzag; and the car went into the ditch and I jumped and further on the car hit a tree and Mr. Antonio Andino lay dead on the road. The car collided with the first heifer, which was left there injured. The second heifer was the one to which it was due, the one which caused the car to overturn, the one which came out swiftly; the chauffeur lost control and collided with a tree."

On cross-examination the same witness testified as follows:

"Q. What did you do when the chauffeur hit the heifer?

"A. I stayed in the car, and further on another heifer came out, which was when the chauffeur lost control.

"Q. You did not jump out of the car at any time?

"A. Yes, sir, after the second collision which was with a tree.

"Q. So that if the car had not collided with the trunk no accident would have occurred? Is that the way you look at the matter?

"A. But what I want to explain is that if there had not been a second heifer the car would have gone straight ahead."

Another passenger, Delfín Negrón, testified thus:

"It happened that an animal came out from the left to cross the road. A black heifer, and then, naturally, as it came out so suddenly and stood in front of the car, although everything was done to avoid hitting it, the car in the end hit it. Then the car zigzagged and as it was again under control a new heifer emerged, causing the

chauffeur to apply the brakes in order not to hit it, and then when he applied the brakes the car skidded towards one side and struck a tree and overturned. That is what happened.''

On cross-examination he answered thus:

''Q. So that when the car collided with the heifer, Andino was alive; anything that occurred was after the collision?

''A. He was killed when the collision occurred.

''Q. Was he killed when the car collided with the tree?

''A. When the car overturned, not when it collided, when it overturned; it was then that he was killed.

''Q. What was it that deviated the car towards the tree?

''A. The second heifer, the chauffeur tried not to hit it. He tried to save us all, to save the car, to save the heifer, and he applied the brakes.

''Q. If he had not applied the brakes, what would have happened?

''A. Perhaps all of us would have been killed.''

The principal question to decide is: ''Which of the two heifers was the proximate cause of the accident in which Andino lost his life?

It is very difficult to frame a definition of the term ''proximate cause'' which by reason of its clearness and precision could be applied to all cases. No precise rule has been formulated as yet to determine when the causes are proximate and when they are remote. Each case must be decided by taking into consideration the peculiar facts and circumstances thereof.

In the case of *Atchison T. & S. R. Co.* v. *Calhoun,* 213 U.S. 1, 53 L. ed. 671, wherein as in the present case it was necessary to determine which of two concurrent causes of an accident was the ''proximate cause'' of the injury, the Federal Supreme Court said:

''The law, in its practical administration, in cases of this kind regards only proximate or immediate and not remote causes, and in ascertaining which is proximate and which remote refuses to indulge in metaphysical niceties. Where, in the sequence of events between the original default and the final mischief an entirely independent

and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause. (Citation.) This is emphatically true when the intervening cause is the act of some person entirely unrelated to the original actor. Nevertheless, a careless person is liable for all the natural and probable consequences of his misconduct. If the misconduct is of a character which, according to the usual experience of mankind, is calculated to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse him, and the subsequent mischief will be held to be the result of the original misconduct.''

The extracts quoted below will aid us in deciding the question at issue:

''If the original act was wrongful, and would naturally, according to the natural course of events prove injurious to some other person or persons, and does actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which were innocent. *But, if the original act only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote.*'' (Italics ours.) *Schewartz* v. *Shull*, 45 W. Va. 405, 31 S. E. 914, 917; Cooley, Torts, p. 76; 62 C. J. p. 1120.

''When the line of causation has been broken by the intervention of some efficient, independent cause, such intervening cause must be accepted as the proximate cause, and in an action against the original wrongdoer the law will not undertake to further pursue the question or resulting damage. To avail the original wrongdoer as a defense, however, the intervening cause must be both independent and responsible of itself.'' *Watters* v. *City of Waterloo*, 126 Iowa 199, 101 N. W. 871.

''The proximate cause need not be the sole cause. If several efficient causes contribute to an injury, and without the operation of each the injury would not have occurred, each cause is a proximate cause. Where the act or neglect of a third person concurs with that of the original wrongdoer, both being efficient causes in producing the injury, the liability of the latter continues, and the same is true if the negligence of defendant concurred with some accidental cause which plaintiff had not legally contributed.'' 62 C. J. sec. 39, p. 1126.

Let us apply the jurisprudence just cited to the case at bar. The automobile in which the deceased was traveling found a first obstacle in its way: the heifer owned by Isidra Orozco. The presence of this animal in the highway, at large and without there being any person to prevent it from causing damage to travelers on the public road, undoubtedly constituted negligence on the part of the owner or keeper of the animal. It may be conceded, without holding, that the person responsible for the presence of the animal then and there was its owner and not Central Victoria. The driver of the car was unable to avoid the collision with the heifer. The collision occurred, producing fatal consequences for the heifer but without causing injury to any of the nine persons who traveled in the automobile. After that first danger had passed and the car had straightened its course, being once more under the control of its driver, another danger arose: the emergence of another heifer, the one marked "C.V." and owned by the defendant. The chauffeur tried to avoid a collision with the animal; he applied the brakes, changed the speed, and then the car skidded on the wet pavement, and the accident occurred in which Andino lost his life.

From the record it does not appear that the defendant made the slightest effort to explain or excuse in any way the presence of its heifer on a public highway at four o'clock in the morning. All its efforts were directed to inculpate Isidra Orozco, as if the heifer which belonged to the latter, and not the one which it owned, was the proximate cause of the accident. Would the accident have happened if the defendant had been careful to prevent the animal from roaming at large on the highway? Certainly not. The automobile, having recovered from the first collision, would have continued on its way and Andino would not have lost his life. There is no doubt that the negligence of the defendant was the proximate cause of the damage.

The lower court did not err in holding that this case is governed by the provisions of section 1805 of the Civil Code.

*Torres* v. *Dávila* 47 P.R.R. 298; *Gigante* v. *Alvarez,* 48 P.R.R. 484, 492; *Troche* v. *Matos,* 52 P.R.R. 282; *Osorio* v. *Taboada,* 52 P.R.R. 806.

The judgment appealed from must be affirmed.

Mr. Justice De Jesús took no part in the decision of this case.