FONOTI JESSOP, Plaintiff

v.

NAM DBA NAM GROCERY STORE, Defendant

High Court of American Samoa
Trial Division

CA No. 112-85

September 11, 1986

Before REES, Chief Justice, TAUANU'U, Chief
Associate Judge, OLO, Associate Judge.

Counsel: For the Plaintiff, John Ward
For the Defendant, Aviata Fa'alevao

On the night of May 21, 1985, defendant's
porch fell onto plaintiff's car. Plaintiff's
employee had parked the car in defendant's lot
while shopping in defendant's store. He emerged to
find the second-story porch resting on the car as
well as on several other vehicles. The car was
substantially destroyed.

The employee testified that the defendant, Mr. Nam, came out from the store and promised everyone that his insurance company would pay for all damages. Mr. Nam testified that he did no such thing but that the owner of the store building, who for some reason is not a party to this action, was present and may have made such a promise.

Plaintiff Jessop attempted several times to discuss the matter with Mr. Nam and received no definite response until September 13. On that day Nam's attorney wrote Jessop's attorney that the damages, if any, were "generated by an act of God"; therefore Mr. Nam was not the party from whom to seek payment. The act in question was a windstorm that buffeted Tutuila on the night of May 21. The Pago Pago office of the National Weather Service recorded wind speeds of up to 28 miles per hour that night, and defendant's witnesses testified that some gusts were even stronger.

For this Court to suggest that the wind that blew Mr. Nam's porch down was not an act of God would be impudent. Nevertheless, courts have long held that divine intervention does not always excuse a defendant's negligence. On the contrary, duties of care toward other people include the duty to take precautions against those natural phenomena which, although unusual and inconvenient, happen often enough to be deemed reasonably foreseeable.

This is particularly true of the wind. In Cachick v. United States, 161 F. Supp. 15 (S.D. Ill. 1958), for instance, the federal government was held liable when a gust of wind that may have been as strong as 70 miles per hour overturned a reviewing stand at a military exercise:

> The mere fact that a high wind was blowing at and before the ladies' stand blew over did not make the blowing over of the stand an act of God so as to exempt the defendant from liability. A loss or injury is due to an act of God when it is occasioned exclusively by natural causes such as could not be prevented by human care, skill and foresight. The collapse of the ladies' stand was the result of the previous negligence in its construction which permitted it to be overthrown by a wind that was not unprecedented . . . .

<u>Id</u>. at 19. See also <u>The Mariner</u>, 17 F.2d 253 (5th Cir. 1927); <u>A.M. Holter Hardware v. Western Mortgage & Warranty Title Co.</u>, 149 P. 489 (Mont. 1915).

Weather Service records suggest that 28 mile per hour winds are neither unprecedented nor even particularly unusual in Samoa. In the ten months of 1985 for which records are available, for instance, winds as strong or stronger were recorded on about 30 different days, and the strongest recorded wind was 46 miles per hour. Since the Weather Service records wind speeds hourly rather than continuously it is of course possible that an unusually strong gust on May 21 may have escaped detection; but it is no more likely that this happened on May 21 than on any other day. On the evidence before us we must conclude that the windstorm that blew Mr. Nam's porch down was not such an extraordinary one as to excuse Mr. Nam from taking reasonable precautions to protect his customers against it.

The circumstances of this case bolster our conclusion. The plaintiff's employee was a "business invitee," that is, a person whom the defendant had invited to park in his lot in the hope of consequent financial gain. Business owners must protect their business invitees not only against hazards they caused and hazards they knew about, but also against hazards they might have discovered by reasonable inquiry. This special duty has sometimes been justified on the ground that the economic benefit to the owner makes it easier or more just for him to bear the burden of liability, but more often simply because the owner makes an implied representation "when he encourages others to enter to further a purpose of his own, that reasonable care has been exercised to make the place safe for those who come for that purpose." W. Prosser et al., The Law of Torts 422 (5th ed. 1984).

In this case, moreover, the defective porch had been added to the building for Mr. Nam's own purposes. Although arrangements with the builder were made by the owner of the building, the construction was requested and paid for by Mr. Nam. The court expresses no opinion on who, as between Mr. Nam and his landlord, was ultimately responsible for the damage resulting from the collapse of the porch. As against an innocent third party whose presence he had invited by

keeping his store open on the night of May 21, however, Mr. Nam must be held liable.

Plaintiff seeks to recover the value of the car and also some compensation for the time during which he was deprived of the use of the car. Each of these amounts is difficult to calculate.

Plaintiff purchased the car about five months before the accident for $5,750. By the time of the accident it was presumably worth somewhat less. After the accident the estimates of its value range from nothing at all (one repair shop declared it "beyond repair" and another estimated the repairs would cost $6,000, more than the purchase price) to as much as $2,465, the amount for which Mr. Jessop ultimately traded it in when he purchased a new car. The Court takes judicial notice, however, of the fact that even irreparable cars are worth something as scrap, and also of the fact that trade-in prices are extremely unreliable indicators of value, depending as much on the purchase price of the replacement vehicle and other factors as on the intrinsic worth of the car being traded. (In this case $2,465 seems to have been settled upon because when subtracted from the purchase price of $9,465 it resulted in the round number of $7,000 to be paid in cash.) Faced with the necessity of reaching some decision based on the evidence at hand, however, the court will figure the value of the car after the accident at halfway between the lowest and the highest estimates, or $1,232. Thus the plaintiff should be entitled to a sum equal to ($5,750 - five months' depreciation - $1,232) for the value of the car.

We are spared the necessity of figuring the value of five months' depreciation by the serendipitous circumstance that plaintiff is also entitled to compensation for the five months after the accident during which he was unjustifiably deprived of the use of a car. Until September 13 plaintiff's requests that defendant either repair or replace his vehicle met with evasive responses. Within a reasonable time after that ---- and several weeks seems reasonable for a transaction of this magnitude --- plaintiff should have mitigated his damages by deciding for himself whether to repair or replace the car. Between May 21 and sometime in October, however, plaintiff was deprived of a car through defendant's negligence and subsequent evasiveness rather through any fault of his own. He asks for $35 per day, the price of a rental car, as compensation. We know, however,

61

that having a car during this period must have been worth somewhat less that $35 per day to the plaintiff, since he did not in fact rent a car. Yet it was obviously worth more than zero; we are at a loss to say exactly how much more. The best estimate available to us of the value of a car to Mr. Jessop during the five months _after_ the accident is that it was probably about the same as what Mr. Jessop actually did pay for his car--- that is, its depreciation --- during the five months _before_ the accident.

Thus the two unknown figures cancel each other out: Mr. Jessop is entitled to a sum equal to ($5,750 - five months' depreciation - $1,232 + five months' depreciation), or $4,518.

Judgment is entered in favor of plaintiff and against defendant in the amount of $4,518.00.