# United States Court of Appeals for the Federal Circuit

---

**REGINA M. PIRKL,**
*Claimant-Appellant*

**v.**

**ROBERT WILKIE, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2017-1916

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-4303, Senior Judge Lawrence B. Hagel.

---

Decided: October 17, 2018

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

JOHN JACOB TODOR, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by MARTIN F. HOCKEY, JR., ROBERT EDWARD KIRSCHMAN, JR., CHAD A. READLER; MEGHAN ALPHONSO, BRIAN D. GRIFFIN, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

---

Before REYNA, TARANTO, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

This case returns to us from a decision of the Court of Appeals for Veterans Claims rendered on remand from our decision in *Pirkl v. Shinseki*, 718 F.3d 1379 (Fed. Cir. 2013) (*Pirkl I*), where we addressed the remedy required for a clear and unmistakable error in a disability rating decision long ago. We now reverse the Veterans Court's decision. We conclude that the Veterans Court mistakenly interpreted a key regulation and took too constrained a view of the legally required corrective remedy for the undisputed rating decision error. We remand for further proceedings to conduct the inquiry needed to give the required remedy.

I

A

Robert Pirkl, the late husband of appellant Regina Pirkl, served in the United States Navy between 1947 and 1949. He filed a claim in 1950 with the Veterans Administration (now the Department of Veterans Affairs, both "VA"), seeking disability benefits based on a service-connected psychiatric condition. The VA awarded him benefits, assigning him a low disability rating. Subsequently, based on changed circumstances, the VA assigned him a 100% disability rating effective September 30, 1952. *Pirkl I*, 718 F.3d at 1380.

There followed a series of new VA decisions over the years that adopted lower disability ratings for 35 years. First, on September 3, 1953, the relevant VA regional office reduced Mr. Pirkl's disability rating to 70%, effective November 3, 1953, based on a newly acquired VA medical examination. Second, on December 10, 1956, the VA regional office reduced Mr. Pirkl's then-70% disability rating to 50%, effective February 9, 1957, citing a VA

medical examination and a change in Mr. Pirkl's employment status.  Third, on April 13, 1966, the VA regional office reduced Mr. Pirkl's then-50% disability rating to 30%, effective July 1, 1966, based on a VA medical examination and additional evidence regarding Mr. Pirkl's employment status.  Mr. Pirkl appealed that decision (unlike the 1953 and 1956 decisions) to the Board of Veterans' Appeals, which affirmed the 1966 reduction in January 1967.  Finally, after extensive litigation based on a 1991 claim to reopen a previously denied claim, the Board awarded Mr. Pirkl a 100% disability rating, effective November 30, 1988.  *See id.*

B

In December 2001, Mr. Pirkl filed a motion under 38 U.S.C. § 5109A to revise, based on asserted clear and unmistakable error (CUE), the three VA decisions that left him without a 100% rating between late 1953 and late 1988, namely, the September 1953, December 1956, and April 1966 rating decisions.

The VA addressed the 1966 decision first—without waiting for a decision on whether there was CUE in the 1953 or 1956 rating decisions that together produced the 50%-rating starting point for the VA's 1966 decision (which reduced the rating further, to 30%).  Because the 1966 decision had been affirmed by the Board in 1967, the allegation of CUE in the 1966 decision was treated as a CUE motion under 38 U.S.C. § 7111 (concerning requests for revision of *Board* decisions based on CUE) and was addressed directly by the Board, rather than a VA regional office.  *See* 38 U.S.C. § 7111(e)–(f) (providing that a request for revision of a final Board decision based on CUE "shall be submitted directly to the Board and shall be decided by the Board on the merits" and, if submitted elsewhere, is to be referred to the Board); 38 C.F.R. § 20.1104 ("When a determination of the agency of original jurisdiction is affirmed by the Board of Veterans'

Appeals, such determination is subsumed by the final appellate decision."). In August 2002, the Board found no CUE in its 1967 affirmance of the 1966 disability rating reduction from 50% to 30%. *Pirkl I*, 718 F.3d at 1381. The Board, in its ruling, addressed only whether the reduction from 50% to 30% was clear and unmistakable error; it did not address whether the 50% starting point was clear and unmistakable error. *See* Decision No. 0208991, Docket No. 02-00 114A, 2002 WL 32560331, at *6–9 (Bd. Vet. App. Aug. 2, 2002).

The VA regional office then took up the claim of CUE in the rating-reduction decisions of September 1953 (from 100% to 70%) and December 1956 (from 70% to 50%). In February 2005, it determined that Mr. Pirkl had not shown CUE in either decision. In October 2005, Mr. Pirkl filed a Notice of Disagreement with the February 2005 ruling, and in May 2006, he appealed to the Board. In both instances, according to the later descriptions by the Veterans Court and the Board, he referred only to the portion of the regional office's ruling that found no CUE in the 1953 rating decision. He did not separately challenge the portion that found no CUE in the 1956 rating decision. *See Pirkl I*, 718 F.3d at 1381.

In August 2006, the Board concluded that Mr. Pirkl was right in his claim of CUE in the September 1953 rating decision that reduced his disability rating from 100% to 70%. It determined that the VA in 1953 had failed to comply with 38 C.F.R. § 3.170 (1949), a regulation governing reductions of 100% (total) disability ratings. The regulation provided:

> Total disability ratings . . . , when warranted by the severity of the condition, and not granted purely because of hospitalization or home treatment, . . . will not be reduced, in the absence of clear error, without physical examination showing material improvement in physical condition. Ex-

amination reports showing material improvement must be evaluated in conjunction with all the facts of record and consideration must be given particularly to whether the veteran attained improvement under the ordinary conditions of life, i.e., while actually at work, or whether the symptoms have been brought under control by prolonged rest, or generally, by following a regimen which precludes work, and if the latter, reduction from total disability rating will not be considered pending reexamination after a period of employment (three to six months).

The Board found "undebatable error in the application of 38 C.F.R. § 3.170" because Mr. Pirkl "was not employed at the time of the examination which formed the basis of the reduction in rating, and he was not reexamined after an appropriate period of employment." J.A. 39; *see Pirkl I*, 718 F.3d at 1381.[1]

---

[1]     The regulation was amended in 1956, and it was amended and recodified as 38 C.F.R. § 3.343 in 1966. The parties agree that § 3.170 was in force as of the September 1953 and December 1956 rating decisions and § 3.343 was in force as of the April 1966 rating decision. *See* Pirkl Br. 21–22; VA Br. 16. The current version states:

(a) *General.* Total disability ratings, when warranted by the severity of the condition and not granted purely because of hospital, surgical, or home treatment, or individual unemployability will not be reduced, in the absence of clear error, without examination showing material improvement in physical or mental condition. Examination reports showing material improvement must be evaluated in conjunction with all the facts of record, and consideration must be given particu-

C

There followed a series of rulings about implementation of the Board's 2006 determination of CUE in the 1953 decision. Those rulings gave rise to the issues that this court addressed in 2013 and addresses again now.

1

Ten days after the Board's CUE ruling in 2006, the regional office awarded Mr. Pirkl a 100% disability rating from September 30, 1952, to February 9, 1957, the effective date of the December 1956 decision that reduced his disability rating from 70% to 50%. The regional office treated the December 1956 and April 1966 decisions (the latter affirmed by the Board in 1967) as barring—even as part of the remedial implementation of the CUE ruling that reversed the 1953 reduction below 100%— consideration of any increase in Mr. Pirkl's disability rating beyond February 9, 1957. *See* J.A. 44 ("It is noted that the [Board] decision only addresses the issue of the evaluation assigned by the September 3, 1953, rating decision, and does not [a]ffect any of the rating decision[s] made subsequent to that date."); *Pirkl I*, 718 F.3d at 1381.

---

larly to whether the veteran attained improvement under the ordinary conditions of life, *i.e.*, while working or actively seeking work or whether the symptoms have been brought under control by prolonged rest, or generally, by following a regimen which precludes work, and, if the latter, reduction from total disability ratings will not be considered pending reexamination after a period of employment (3 to 6 months).

Neither party here suggests that any language differences in the various versions of the regulation are material to this appeal.

On appeal to the Board, Mr. Pirkl argued that, because the Board awarded him a 100% disability rating as of September 30, 1952, the regulation on reductions of 100% ratings should have governed in 1956 and 1966, but the VA had not afforded him the regulation's protections in those years. The failure to apply the regulation in those years is hardly surprising: in both those years, Mr. Pirkl began the disability rating re-assessment with less than a 100% rating, a premise for application of the regulation. The Board concluded, however, that the December 1956 and April 1966 decisions (the latter affirmed by the Board in 1967) were final as to the rating reductions and their effective dates and that it followed from such finality that the August 2006 Board CUE ruling as to the 1953 rating decision was properly implemented "by simply continuing the 100 percent evaluation until the next final rating reduction in December 1956, which was effective in February 9, 1957." J.A. 92–93. For that reason, the Board dismissed Mr. Pirkl's appeal, and the Veterans Court subsequently affirmed, with Mrs. Pirkl substituted for her husband when he died. *Pirkl I*, 718 F.3d at 1381–82.

2

In *Pirkl I*, we vacated the Veterans Court's decision and remanded the case for further proceedings. We noted the Veterans Court's "factual determination that the subsequent reductions in 1956 and 1966 of Mr. Pirkl's disability rating stand as independent decisions." 718 F.3d at 1384. And we rejected "Mrs. Pirkl's argument that the Board's finding of CUE in the 1953 decision initiated a 'chain reaction' that *necessarily* rendered those later decisions 'null and void.'" *Id.* (emphasis added). But we held that the 1956 and 1966 decisions did not, simply because of their finality, block including post-1956 and post-1966 relief as part of a remedy for the 1953 CUE. "[A] finding of CUE may, under some circumstances, require a later decision to be revisited." *Id.* What was

needed was an inquiry into whether and how correction of the 1953 error altered the bases for, and ultimate conclusions of, the 1956 and 1966 decisions. *Id.* at 1384–85.

Specifically, we stressed the basic statutory standard for implementing a CUE ruling. "Under the statute, a finding of CUE in a prior decision must be implemented as if it had been made on the date of the prior decision." *Id.* at 1384. We three times quoted the command of 38 U.S.C. § 5109A(b): "[A] rating or other adjudicative decision that constitutes a reversal or revision of a prior decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision." *See* 718 F.3d at 1384–85.[2]

We explained that, to give the 2006 CUE correction of the 1953 rating decision the "effect as if" originally made in 1953, the 1956 decision must be examined, not simply taken as prospectively controlling without examination. The key point was that "the Board's finding of CUE in the 1953 decision changed the factual and legal background against which subsequent reductions were made": in particular, when the Board found CUE in the 1953 decision, "the subsequent reduction of Mr. Pirkl's disability rating in 1956 became an effective reduction from a 100% total disability rating, not from a 70% disability rating" (which was the starting point for the actual 1956 rating decision). *Id.* at 1384. Yet the Board "failed to consider the effect of this change in implementing its finding of CUE." *Id.* The question, in short, is whether and how the 1956 decision would have been different if the VA had started with a 100% disability rating, not the 70% disability rating that it actually (but, in retrospect, mistakenly) started with. But the Board did not ask that question.

_____

[2]    The provision governing revisions based on CUE in Board decisions contains materially identical language. *See* 38 U.S.C. § 7111(b).

Still more particularly, we emphasized the role of the regulation governing reductions of 100% disability ratings. 38 C.F.R. § 3.170 (1949); 38 C.F.R. § 3.343. Immediately after noting that the CUE finding "effected a change in the legal context applicable to those later decisions," we explained that "the Board failed to consider the effect of the applicability of 38 C.F.R. § 3.170 (1949) or its successor regulations in the 1956 and 1966 decisions." *Pirkl I*, 718 F.3d at 1384. We added: "we find no support in the record that establishes the 1956 rating decision took into account the 'material improvement' standard" of the regulation. *Id.* Again citing 38 U.S.C. § 5109A(b), we held: "The CUE finding with respect to the 1953 decision thus requires the Board to revisit these later findings and determine the extent to which the CUE finding changes the legal or factual basis of the later evaluations." *Id.* We vacated the Veterans Court's decision and ordered a remand so that the Board "may consider in the first instance, and as part of the implementation of its CUE finding, whether the subsequent reductions of Mr. Pirkl's disability rating in 1956 and 1966 remain proper in view of the applicable regulations in effect at the time." *Id.* at 1385.

3

On remand, the Board again dismissed Mrs. Pirkl's appeal of the regional office's decision not to give relief for the 1953 CUE past the effective date of the 1956 rating reduction. The Board stressed the absence of separate, preserved claims of CUE in the 1956 and 1966 decisions (the latter affirmed by the Board in 1967). It also went on to conclude that the regulation governing VA decisions that reduce 100% disability ratings did not apply to Mr. Pirkl in 1956 and 1966. Specifically, it relied on this court's decision in *Reizenstein v. Shinseki*, 583 F.3d 1331 (Fed. Cir. 2009), to conclude that the regulation applies only when the VA considers reducing a rating at a time when the claimant was actually receiving benefits under a

100% disability rating, not when a claimant was, like Mr. Pirkl, legally entitled to benefits under a 100% disability rating but was not receiving them because of clear and unmistakable VA error. The Board held that the regulation did not have to be applied in the 1956 and 1966 decisions because Mr. Pirkl "was *never* in receipt of a 100 percent rating during the time period being currently examined on appeal." J.A. 138. Accordingly, the Board considered it "unnecessary to conduct an analysis of whether the 'material improvement' standard outlined in those regulations was met at the time of the rating reductions in the December 1956 and April 1966 rating decisions." *Id.*

Mrs. Pirkl appealed to the Veterans Court, which affirmed the Board's decision, substantially for the reasons stated by the Board as just summarized. She then timely appealed to this court. We have jurisdiction pursuant to 38 U.S.C. § 7292. As the parties properly agree, the questions presented are legal ones concerning the meaning of a regulation and the scope of the Board's remedial obligations under Title 38 and this court's *Pirkl I* decision.

II

Under our decision in *Pirkl I*, and under 38 U.S.C. § 5109A, it is clear, and the government does not dispute, that the Board had the authority and the obligation to implement its 2006 finding of CUE in the 1953 rating decision, a finding that revised the 1953 decision to leave the 100% rating in place as of 1953. *See* VA Br. 25. We conclude that it is also clear, under the language of *Pirkl I* and under the governing law, that implementing the 2006 CUE decision requires renewed consideration of the 1956 and 1966 decisions to ensure that Mr. Pirkl is restored to the ratings he would have had over time, upon application of the governing legal standards, in the absence of the now-revised 1953 reduction of his disability rating from 100% to 70%. The governing legal standards, we also

conclude, include the regulation for reductions of 100% ratings.

## A

The language of *Pirkl I* is explicit that the remedy for the CUE in 1953, *i.e.*, the implementation of the 2006 revision of the 1953 decision, which restored Mr. Pirkl's 100% disability rating, did not automatically stop at 1956 just because of the 1956 and 1966 rating decisions (the latter affirmed by the Board in 1967).  We remanded for the Board to "consider in the first instance, and as part of the implementation of its CUE finding, whether the subsequent reductions of Mr. Pirkl's disability rating in 1956 and 1966 remain proper in view of the applicable regulations in effect at the time."  718 F.3d at 1385.  That statement followed our explanation that "[t]he CUE finding with respect to the 1953 decision thus *requires the Board to revisit these later findings and determine the extent to which the CUE finding changes the legal or factual basis of the later evaluations.*"  *Id.* at 1384 (emphasis added).  And we specifically explained that the 2006 revision meant that Mr. Pirkl must be treated as having come into the 1956 VA re-assessment of his disability with a 100% rating, not the 70% rating the 1953 decision had mistakenly left him with: the 1956 reduction *"became an effective reduction from a 100% total disability rating."*  *Id.* (emphasis added).  As a result, the question arose, and had to be considered on remand, whether the regulation on reductions of 100% ratings should have been applied to Mr. Pirkl in 1956 and 1966, with the answer to that question affecting what role the 1956 and 1966 rating decisions could properly play in determining

how long past 1953 he would have kept his 100% rating. *Id.* at 1384–85.[3]

B

We relied in *Pirkl I* on 38 U.S.C. § 5109A(b) as the controlling statute on the scope of the remedy. That statute is explicit that "[a] rating or other adjudicative decision that constitutes a reversal or revision of a prior decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision." Under that language, giving the 2006 revision of the 1953 decision "the same effect as if" the revision had been the decision in 1953 requires that Mr. Pirkl be treated as having the pre-1953 100% rating after 1953, as is undisputed here. *See also Hamer v. Shinseki*, 24 Vet. App. 58, 61 (2010) (noting that, under section 5109A(b), a Board decision finding CUE in an earlier decision "carries with it the same rights, privileges, and constraints that the initial disability rating . . . would have"), *aff'd*, 438 F. App'x 897 (Fed. Cir. 2011).

The language of section 5109A(b) is one way of stating the fundamental principle of corrective remedies that is used throughout the law, though sometimes with modifications: "The injured party is to be placed, as near as may be, in the situation he would have occupied if the wrong had not been committed." *Wicker v. Hoppock*, 73 U.S. 94, 99 (1867); *see Missouri v. Jenkins*, 515 U.S. 70, 87 (1995) (noting that "all remedies" are designed "to restore the victims of [wrongful] conduct to the position they would have occupied in the absence of such conduct"); *see also*,

---

[3]    If Mr. Pirkl would have properly lost his 100% rating in 1956, the regulation would have been inapplicable in 1966. If he would have kept the 100% rating in 1956, he still might have lost it in 1966.

*e.g., United States v. Virginia*, 518 U.S. 515, 547 (1996); *Milliken v. Bradley*, 433 U.S. 267, 280–81 (1977); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418–19 (1975) (quoting *Wicker,* 73 U.S. at 99); *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 187, 194 (1941); *Kerr v. Nat'l Endowment for the Arts*, 726 F.2d 730, 733 (Fed. Cir. 1984) ("[T]he basic purpose of a reinstatement or back pay order is 'restoration of the situation, as nearly as possible, to that which would have obtained but for the [wrongful conduct].'" (quoting *Phelps Dodge*, 313 U.S. at 194)).

We see no basis for reading section 5109A(b) as departing from that basic standard for a corrective remedy when the Board revises an earlier VA decision based on clear and unmistakable error in that earlier decision. Accordingly, the statutorily required remedy here is to give Mr. Pirkl the ratings he would have had, over time, if he had retained his 100% rating in 1953. And that remedy logically requires examination of the 1956 and 1966 decisions and proceedings to determine what they do or do not show about when, if ever, Mr. Pirkl would have lost his 100% rating under the applicable legal standards had they been applied.

C

The applicable legal standards, we hold, include the regulation governing reductions of 100% ratings. 38 C.F.R. § 3.170 (1949); 38 C.F.R. § 3.343. The government argues that the regulation did not cover Mr. Pirkl's situation in 1956, even on the legally required assumption that the revised 1953 decision left him with a 100% rating after 1953. *See* VA Br. 16. We disagree.[4]

---

[4]    The government does not distinguish the 1956 decision from the 1966 decision in its argument about the applicability of the regulation. For simplicity, we focus on the 1956 decision.

We have already held that, "[w]hen the Board determined that the September 1953 decision contained CUE, Mr. Pirkl's disability rating was reset to 100% as of the date of the 1953 decision," and "[t]his means that the subsequent reduction of Mr. Pirkl's disability rating in 1956 became an effective reduction from a 100% total disability rating, not from a 70% disability rating." *Pirkl I*, 718 F.3d at 1384. Mr. Pirkl thus must be deemed to have had a "[t]otal disability rating[]" in 1956. 38 C.F.R. § 3.170 (1949); *see* 38 C.F.R. § 3.343. Under the plain language of the regulation, that rating could "not be reduced" except in accordance with the regulation's terms. 38 C.F.R. § 3.170 (1949); *see* 38 C.F.R. § 3.343.

The government has no textual argument for a contrary conclusion. Rather, it points to this court's decision in *Reizenstein v. Shinseki*, 583 F.3d 1331 (Fed. Cir. 2009), and argues that *Reizenstein*'s reasoning should lead us to conclude that the regulation did not apply to Mr. Pirkl as of 1956. We reject the argument.

In *Reizenstein*, the Board rendered a single decision that, looking back at the 10-year period of alleged disability at issue, adopted a "retrospective staged rating": based on a finding of different degrees of disability during different segments of the past period at issue, the Board assigned ratings of 30%, 50%, 100%, and 30% for successive portions of the period. *Id.* at 1333. When Mr. Reizenstein argued to this court that the Board could not find a 30% disability after the period of 100% disability without complying with 38 C.F.R. § 3.343(a), we disagreed. Rather, we held, the VA had reasonably interpreted the regulation not to apply to the situation of a single VA decision simply finding that, in the past period at issue, the claimant's disability varied in degree, with an intermediate portion of the period involving total disability. 583 F.3d at 1334–38.

That ruling does not apply here. In the "retrospective staged rating" situation that defined "the narrow issue" decided in *Reizenstein, id.* at 1334, the regulatory language did not supply an unambiguous answer, whereas it does here. The language of "reduc[ing]" a "total disability rating[]" based on "improvement" unambiguously covers the ordinary situation, like the one at issue in this case, in which the question is whether the rating assigned in one rating decision (100% on an open-ended prospective basis) is to be superseded by a second, *later* rating decision (that assigns a lower rating). In contrast, the regulatory language does not *clearly* cover the single-VA-decision situation considered in *Reizenstein*. In that circumstance, the VA could resolve the textual uncertainty by reading the regulation as inapplicable to that situation, if that reading was otherwise reasonable, as this court concluded it was. *Id.* at 1337–38. Here, there is no textual uncertainty to resolve.

Indeed, in *Reizenstein*, we emphasized the government's contention that "the regulation was intended to be applied to existing ratings that are *reduced on a prospective basis*" and contrasted "the money awarded for a staged rating" as "compensation for a past period of disability and . . . *independent of the veteran's entitlement to continuing benefits*," so that a veteran's receipt of an ongoing total-disability benefit (on which the veteran may depend) is not being cut off in the staged-rating situation. *Id* at 1337 (emphases added). In the present case, as we explained in *Pirkl I*, the 2006 finding of CUE in the 1953 rating decision means that Mr. Pirkl is deemed to have had a continuing 100% disability rating when the 1956 process of VA re-assessment began. *See* 718 F.3d at 1384. As a result, the reduction adopted in 1956 *was* a prospective reduction of continuing benefits at the 100% level, thus coming within *Reizenstein*'s own rationale for the regulation's scope and outside *Reizenstein*'s rationale explaining why the Secretary's interpretation to exclude

the staged-rating situation was reasonable.  The fact that Mr. Pirkl was, because of the VA's error, not actually receiving the 100%-rating benefit in 1956 no more makes the regulation inapplicable to the 1956 decision to reduce his rating than it disentitles him to retroactive relief under the regulation for the period from 1953 to 1956.  In those years, Mr. Pirkl was not actually receiving the 100%-rating benefits, because of the VA's error, yet the Board awarded relief for that period, and the government does not dispute the propriety of that relief.

Accordingly, contrary to the government's contention, the regulation was applicable to Mr. Pirkl's situation in 1956, and a reduction, to be lawful, had to meet the regulation's requirements.

## D

In these circumstances, the remedial standard of section 5109A(b) requires the Board to determine, in this case, whether (and by how much) Mr. Pirkl's 100% rating would have been reduced in 1956 had the regulation for reductions of 100% ratings been applied then and, if the 100% rating remained after 1956, whether (and by how much) the 100% rating would have been reduced in 1966 had the regulation been applied then.  The Board has not yet conducted the required remedial inquiry.

The VA did not apply the regulation at either time: after all, because of the incorrect 1953 decision, the re-assessments of disability in 1956 and 1966 did not actually present an occasion to apply the regulation, given that Mr. Pirkl entered the re-assessments in both of those years *without* a 100% disability rating.  As a result, the VA has not specifically decided how the regulation applied in 1956 and 1966.  Nevertheless, the records and findings in the VA decisions in those years may be relevant, and may even supply an answer, to the remedial question now presented.  To give Mr. Pirkl the corrective remedy required by section 5109A(b), the Board must examine

those records and findings to determine what ratings Mr. Pirkl would have had up through 1988 if the clearly and unmistakably erroneous decision in 1953 had not been made and the applicable law, including the regulation we have discussed, had been followed. In particular, this inquiry involves consideration of whether the medical examinations in 1956 and 1966, mentioned in the record before us (as already noted), would have supported the findings needed under the regulation had it been applied.

We ruled in *Pirkl I* that the existence of the 1956 and 1966 rating decisions (the latter affirmed by the Board in 1967) does not itself block the case-specific inquiry required to give a proper remedy for the CUE in 1953. We held that the Board must "revisit these later findings and determine the extent to which the CUE finding changes the legal or factual basis of the later evaluations." 718 F.3d at 1384 (citing 38 U.S.C. § 5109A(b)). We so ruled even while recognizing that Mr. Pirkl unsuccessfully sought separate CUE relief from the 1956 and 1966 decisions, on grounds distinct from the propagation forward of the 1953 clear and unmistakable error as to Mr. Pirkl's disability rating, and that the rejections of those separate CUE challenges had become final. *Id.* at 1381.

The government has not shown that *Pirkl I* is wrong in this respect. Most importantly, it has not pointed to any statutory provision that curtails the section 5109A(b) entitlement to receive corrective relief for CUE where the CUE (an incorrect rating) has propagated into later decisions, simply because rejections of *distinct* challenges to the later decisions are final. This entitlement is part of the statutory CUE exception to finality (here, the finality of the 1953 decision); it is not, as the government might be suggesting, some additional exception to finality, beyond those provided by 38 U.S.C. §§ 5108, 5109A, 7111. Nor can the government say that the later rating decisions break the chain of causation from the 1953 rating to later ratings: far from being either causally independent

or unforeseeable, the clearly and unmistakably wrong 1953 rating had the effect under the benefits regime of setting the express premise for the 1956 decision, which in turn set the express premise for the 1966 decision.[5]

More generally, the government has not pointed to statutory, regulatory, or judicial authority establishing that, even before the resolution of the CUE challenge to the 1953 decision, Mr. Pirkl was required to challenge the 1956 and 1966 rating decisions not only on the grounds he did assert, but also on the ground that they started with incorrect premises (too low a rating) because of the 1953 error separately being challenged, or establishing that Mr. Pirkl had to try to keep alive the separate CUE challenges to the 1956 and 1966 decisions while the CUE challenge to the 1953 decision was being considered.[6]  We

---

[5]    Inquiries into whether subsequent events eliminate or curtail liability or damages for earlier wrongful conduct have long focused on the independence and foreseeability of those subsequent events vis-à-vis the earlier conduct. *See*, *e.g.*, *Lillie v. Thompson*, 332 U.S. 459, 462 (1947); *Atchison, Topeka, & Santa Fe Ry. Co. v. Calhoun*, 213 U.S. 1, 7 (1909); *Milwaukee & Saint Paul Ry. Co. v. Kellogg*, 94 U.S. 469, 475 (1877); *see also Utah v. Strieff*, 136 S. Ct. 2056, 2073 (2016) (Kagan, J., dissenting) (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts 312 (5th ed. 1984)).

[6]    In federal court litigation, Rule 60(b)(5) provides that a court may set aside a judgment that is final when that judgment is "based on an earlier judgment that has been reversed or vacated." Fed. R. Civ. P. 60(b)(5). "This ground is limited to cases in which the present judgment is based on the prior judgment in the sense of claim or issue preclusion." 11 Charles Alan Wright et al., Federal Practice and Procedure § 2863 (3d ed. 2012).  In that context, involving a second judgment's dependency on a

note that, in this matter, the Board itself separated out the 1966 CUE issue from the 1953 and 1956 issues and finally decided the 1966 CUE issue without waiting for resolution of the 1953 CUE challenge. We conclude that we have not been shown a convincing basis for finding that Mr. Pirkl committed a procedural default limiting his ability to secure the corrective relief guaranteed by section 5109A(b) or that relief automatically stops in time at the 1956 rating decision.

## III

We therefore reverse the Veterans Court's decision and remand for that court to remand to the Board for further proceedings consistent with this opinion.

Costs awarded to Mrs. Pirkl.

**REVERSED AND REMANDED**

---

first, finality of the second judgment, with no still-pending direct appeals, is no bar to its being corrected once the underlying first judgment is corrected. *See, e.g., id.*; *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc.*, 690 F.3d 382, 388 (5th Cir. 2012); *Werner v. Carbo*, 731 F.2d 204, 208 (4th Cir. 1984); *see also* 18A Wright et al., *supra*, § 4433.